SMITH PATTEN
SPENCER F. SMITH, ESQ. (SBN: 236587)
DOW W. PATTEN, ESQ. (SBN: 135931)
353 Sacramento St., Suite 1120
San Francisco, California 94111
Telephone (415) 402-0084
Facsimile (415) 520-0104

Attorneys for Plaintiffs
ARTHUR M. SMITH IV, RICHARD TRAN, and
AARON T. MOODY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| ARTHUR M. SMITH IV, RICHARD TRAN, and AARON T. MOODY,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED AIRLINES, INC.; the INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, LOCAL LODGE 1781; and DOES 1 to 10.<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**(1) BREACH OF CONTRACT**<br><br>**(2) BREACH OF DUTY OF FAIR REPRESENTATION**<br><br>**JURY TRIAL DEMANDED** |
|---|---|

Plaintiffs Arthur M. Smith IV, Richard Tran, and Aaron T. Moody (collectively, "Plaintiffs") file this Complaint against United Airlines, Inc. ("UAL") and the International Association of Machinists and Aerospace Workers, Local Lodge 1781 ("IAMAW") (collectively, "Defendants").

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the breach of representation claim pursuant to 29 U.S.C. § 185, 28 U.S.C. §§ 1331 and 1337(a), and 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction over Plaintiffs' related state law claim pursuant to 28 U.S.C. § 1367 because it arises out of the same transaction.

2. Venue is proper in this Court as the acts complained of occurred within this Judicial District.

3. Plaintiffs have been damaged in excess of the jurisdictional amount of this Court.

## INTRODUCTION

4. This is an action for damages and injunctive relief for Breach of Contract and Breach of the Duty of Fair Representation. This action arises out of events involving Plaintiffs and Defendants UAL and IAMAW acting in concert to deny Plaintiffs their rights to be paid bargained-for wages.

## THE PARTIES

5. Plaintiff Arthur M. Smith IV ("Mr. Smith") is currently employed by UAL as a Ramp Serviceman at the San Francisco International Airport ("SFO").

6. Plaintiff Richard Tran ("Mr. Tran") is currently employed by UAL as a Ramp Serviceman at SFO.

7. Plaintiff Aaron T. Moody ("Mr. Moody") is currently employed by UAL as a Ramp Serviceman at SFO.

8. Defendant United Airlines, Inc. is a Delaware Corporation licensed to and doing business within this judicial district.

9. Defendant International Association of Machinists and Aerospace Workers, Local Lodge 1781 is a labor union operating in the State of California, County of San Francisco.

10. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1-10, inclusive, and Plaintiffs therefore sue such Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named Defendants is responsible in some manner for the occurrences, acts, and omissions alleged herein and that Plaintiffs' injuries as alleged herein were proximately caused by such aforementioned Defendants.

## FACTS COMMON TO ALL CAUSES

11. Plaintiffs are all currently employed by UAL as Ramp Servicemen and represented by IAMAW.

12. At all relevant times, the terms and conditions of Plaintiffs' employment with UAL were governed by the company-wide collective bargaining agreement, "Agreement Between United Airlines, Inc. and International Association Of Machinists And Aerospace Workers" ("Agreement").

13. In relevant part, Article VI, Sections (A)-(B) of the Agreement define the job responsibilities of the "Ramp Serviceman" and "Lead Ramp Serviceman" positions. Specifically, a Ramp Serviceman services aircraft at ramps and terminals involving the loading, stowing, unloading, and pick-up and delivery of all cargo. A Lead Ramp Serviceman performs the same job responsibilities as a Ramp Serviceman but additionally may be required to lead and direct the work of other employees of lower classifications, and to give instruction and training to employees of the same or lower classification.

14. Pursuant to Article XXVI, Schedule A of the Agreement, Plaintiffs earn between $14.00-18.00 per hour as Ramp Servicemen, as based upon their seniority with UAL. The hourly rate for a Lead Ramp Serviceman is approximately $21.00 per hour.

15. The Lead Ramp Serviceman is chosen on a daily basis to lead other Ramp Servicemen. This person officially chosen is known as a "Card Person" and assumes the responsibilities of the Lead Ramp Serviceman classification for one day only. For that day, the Card Person's wages are increased to approximately $21.00 per hour.

16. Throughout Plaintiffs' employment with UAL, the difference between their pay as Ramp Servicemen and their pay as Lead Ramp Servicemen ranged between $5.00-7.00 per hour.

17. On any given day, there are frequently two or more work groups of Ramp Servicemen. In that case, one group will have an official Card Person, whereas the remaining group(s) have "unofficial" Card Person(s) who perform all of the duties of the Lead Ramp Serviceman position but do not receive the commensurate daily pay increase.

1  18. Since arriving at SFO, Mr. Smith, Mr. Tran, and Mr. Moody have each worked hundreds of days as unofficial Card Persons without the appropriate pay increases, even though all of them had received the pay increases while working in other airports as UAL employees and IAMAW members.

19. Notwithstanding the express provisions of the Agreement, IAMAW ignored and/or rejected all of Plaintiffs' grievances regarding the discrepancies in their pay. In fact, when Plaintiffs voiced their concerns, IAMAW Vice President Olulade Ajetomobi ("Mr. Ajetomobi"), as well as other IAMAW representatives, repeatedly told them that not paying the unofficial Card Persons the increased rate was "how it's done in San Francisco," or words to that effect.

20. Upon information and belief, IAMAW never brought any of Plaintiffs' grievances to the attention of UAL in order to facilitate a resolution.

### PLAINTIFF ARTHUR M. SMITH IV

21. Mr. Smith has been a full-time employee of UAL since November 2006. From November 2006 to February 2008, he worked at SFO. From February 2008 to June 2008, he worked in Dulles International Airport ("Dulles") in Washington D.C. From June 2008 to August 2011, he worked in Chicago. He then returned to SFO but worked in another subdivision. Mr. Smith has worked in his current position as a Ramp Serviceman at SFO since around June 2012.

22. In 2008, as a UAL employee and IAMAW member in both Dulles and Chicago, Mr. Smith was paid the correct wage per the Agreement, approximately $21.00 per hour, whenever he performed Card Person duties.

23. However, in 2012, when Mr. Smith returned to SFO, he first witnessed Ramp Servicemen performing the job duties of Card Persons but not receiving the appropriate daily raise for their responsibilities.

24. Between his first and second stints at SFO, Mr. Smith has worked at least 200 days as an unofficial Card Person and not received the appropriate raise.

4

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

25. During Mr. Smith's second stint, he earned approximately $13.36 per hour. He currently earns $14.40 per hour.

26. On or around January 31, 2013, Mr. Smith filed a grievance regarding not receiving the proper daily pay raise for performing Card Person responsibilities.

27. However, IAMAW did not respond to Mr. Smith's grievance. Thus, in early February 2013, Mr. Smith filed a second grievance regarding IAMAW's failure to respond in a timely manner to his January 2013 grievance.

28. In June or July 2013, Mr. Smith spoke with Mr. Ajetomobi regarding his original grievance, at which time Mr. Smith also notified him of his second grievance. Mr. Ajetomobi told Mr. Smith that neither grievance would be heard, as UAL was operating properly according to Agreement procedures.

29. In August 2013, after speaking with his co-workers, Mr. Smith spoke with Mr. Ajetomobi and IAMAW President Larry Wing ("Mr. Wing") multiple times regarding his unfair treatment in pay. On each occasion, Mr. Wing and Mr. Ajetomobi sided with UAL.

## PLAINTIFF RICHARD TRAN

30. In May 2004, Mr. Tran started working for UAL in San Diego, where he stayed until January 2012. From January 2012 to the present, Mr. Tran has been employed by UAL at SFO.

31. During his time in San Diego, Mr. Tran worked numerous times as a Card Person and received the appropriate pay increase.

32. When his first week at SFO in January 2012, however, Mr. Tran noticed that Lead Ramp Servicemen regularly delegated all of their work to Ramp Servicemen, whom did not receive the appropriate daily pay increase.

33. Between January 2012 and November 2013, Mr. Tran was sporadically assigned to perform the job duties of a Card Person but only sometimes paid him the correct daily rate.

34. In 2012 alone, even though he was paid the appropriate daily pay increase as the official Lead Ramp Serviceman approximately 175 times, he was assigned to be an unofficial Card Person approximately 100 times without the pay increase.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

35. When Mr. Tran started at SFO, his earned approximately $15.44 per hour. Currently, his hourly pay rate is approximately $17.98.

36. In early February 2013, Mr. Tran filed a grievance with IAMAW regarding the lack of appropriate compensation for performing Card Person responsibilities. A couple days later, IAMAW Shop Steward Christopher Lusk ("Mr. Lusk") orally denied Mr. Tran's grievance and reiterated the phrase, "this is the way it's done in San Francisco," or words to that effect.

37. Though Mr. Tran felt that the lack of appropriate compensation for performing Card Person duties was wrong, he became fully aware of the breach of contract in or around August 2013 when Mr. Smith raised the issue with him and other UAL employees.

## PLAINTIFF AARON T. MOODY

38. In May 2006, Mr. Moody began his employment with UAL in Denver. From approximately July 2006 to April 2007, he worked for UAL in Omaha, Nebraska. He returned to Denver around April 2007, where he remained until around April 2012. Since April 2012, Mr. Moody has worked for UAL at SFO.

39. In 2008, while in Denver, Mr. Moody underwent training regarding minimum qualifications to work as a Lead Ramp Serviceman. Thereafter, he worked as a Card Person on numerous occasions.

40. Also while Mr. Moody worked in Denver, the local lodge of the International Association of Machinists and Aerospace Workers protected its members by rejecting the implementation of the so-called "Card Man Rule," which would have permitted UAL to pay unofficial Lead Ramp Servicemen at the daily rate of Ramp Servicemen.

41. Prior to SFO, Mr. Moody had always received the appropriate daily pay increases whenever he performed Card Person responsibilities.

///
///
///
///

42. When Mr. Moody started in SFO, however, he immediately noticed the pay discrepancy. Since April 2012, he has been paid appropriately 40-50 days for performing Lead Ramp Serviceman duties. However, other than those days, Mr. Moody has unofficially performed Lead Ramp Serviceman responsibilities every work day at SFO but has not received the appropriate daily pay increase.

43. When Mr. Moody started at SFO, his wages as a Ramp Serviceman were approximately $13.36 per hour. His current rate of pay is approximately $14.40 per hour.

44. In early February 2013, Mr. Moody filed a grievance with IAMAW regarding his lack of appropriate compensation for performing Card Person responsibilities.

45. Mr. Ajetomobi orally responded to Mr. Moody's grievance immediately and stated that a Card Person grievance had already been submitted, but that it was an ungrievable offense because it did not violate the Agreement. Mr. Ajetomobi then repeated the phrase, "this is the way it's done in San Francisco," or words to that effect.

46. Mr. Moody was aware of the pay discrepancy since his first day at SFO. He had informally brought it to Mr. Ajetomobi's attention before February 2013, to which Mr. Ajetomobi stated that Mr. Moody was "no longer in Denver, and this was the San Francisco way," or words to that effect.

47. After that time, both Mr. Moody and Mr. Smith independently began to talk with other UAL co-workers about the pay discrepancy.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
### (alleged by Plaintiffs against UAL)

48. As a first, separate and distinct claim, Plaintiffs complain of Defendant UAL, and for a claim, alleges:

49. The factual allegations of Paragraphs 1 through 47, above, are re-alleged and incorporated herein by reference.

50. Plaintiffs, by and through IAMAW, and Defendant UAL, by and through its agents, entered into the Agreement, a written contract that governed the terms of Plaintiffs' employment. As stated above, the relevant terms of the Agreement defined the job responsibilities of the "Ramp Serviceman" and "Lead Ramp Serviceman" positions. Additionally, as stated above, the Agreement provided that Lead Ramp Servicemen were paid approximately $5-7 more per hour than Ramp Servicemen.

51. Plaintiffs undertook employment and duly performed all of the conditions of the Agreement by continuing to work for Defendant UAL as dedicated employees.

52. Defendant UAL, acting in concert with IAMAW, breached the Agreement with Plaintiffs by not compensating them with the appropriate daily pay increase even though they had collectively worked hundreds of days for UAL as unofficial Lead Ramp Servicemen.

53. Plaintiffs suffered damages legally caused by the breach of contract as set forth below.

## SECOND CAUSE OF ACTION
## BREACH OF DUTY OF FAIR REPRESENTATION
### (alleged by Plaintiffs against IAMAW)

54. As a second, separate and distinct claim, Plaintiff complains of Defendant IAMAW, and for a claim, alleges:

55. The factual allegations of Paragraphs 1 through 53 above are re-alleged and incorporated herein by reference.

56. Jurisdiction arises under 29 U.S.C. § 185, 28 U.S.C. §§ 185, 28 U.S.C. §§ 1331 and 1337(a), and 28 U.S.C. §§ 2201 and 2202.

57. Throughout their employment with UAL, Plaintiffs were represented as union members by IAMAW.

58. At all relevant times, UAL and IAMAW were parties to the Agreement, which governed Plaintiffs' employment. The Agreement was entered into for the benefit of the employees of Defendant UAL. Plaintiffs were UAL employees entitled to the benefits of the Agreement, including its pay scale, as set by Article XXVI, Schedule A.

59. Plaintiffs allege that as the exclusive bargaining agent for Plaintiffs, IAMAW had a duty to represent Plaintiffs fairly in enforcing their rights under the Agreement with UAL, namely the right to receive the appropriate daily compensation for performing Lead Ramp Serviceman responsibilities.

60. As stated above, while working at airports other than SFO, each of the Plaintiffs received the appropriate pay increase and/or IAMAW representation regarding compensation for performing Lead Ramp Serviceman responsibilities.

61. Defendant IAMAW has acted in concert with UAL to suppress the appropriate compensation owed to Ramp Servicemen at SFO per the Agreement by unambiguously and intentionally refusing to bring any of Plaintiffs' grievances to the attention of UAL, commonly repeating the phrase, "this is the way it's done in San Francisco," or words to that effect, thereby implicitly acknowledging that UAL's practices, and IAMAW's lack of representation, are not consistent with other airports.

62. By their grievances, Plaintiffs have exhausted all available avenues of relief which are warranted under the circumstances, and any other or further attempts would be inadequate or futile.

63. Plaintiffs seek preliminary and permanent injunctive relief enjoining Defendants UAL and IAMAW from failing to compensate Plaintiffs at the appropriate daily rate for performing Lead Ramp Serviceman work.

64. In so doing, IAMAW, acting in concert with UAL, engaged in affirmative and intentional conduct, not mere negligence, which was not in the interests of Plaintiffs, its union members, and which breached the duty of fair representation which IAMAW owes all its members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For general damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this court;

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

2. For special damages in amounts according to proof;

3. For injunctive relief enjoining UAL to compensate Plaintiffs at the appropriate daily rate whenever they perform Lead Ramp Serviceman responsibilities;

4. For attorneys' fees as provided by law;

5. For interest as provided by law;

6. For costs of suit herein; and

7. For such other and further relief as the Court deems fair and just.

Dated: March 19, 2014                                    SMITH PATTEN

By: _____
SPENCER F. SMITH
DOW W. PATTEN
Attorneys for Plaintiffs
ARTHUR M. SMITH IV, RICHARD TRAN,
and AARON T. MOODY

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all matters so triable.

Dated: March 19, 2014                                    SMITH PATTEN

By: _____
SPENCER F. SMITH
DOW W. PATTEN
Attorneys for Plaintiffs
ARTHUR M. SMITH IV, RICHARD TRAN,
and AARON T. MOODY