SMITH PATTEN
SPENCER F. SMITH, ESQ. (SBN: 236587)
DOW W. PATTEN, ESQ. (SBN: 135931)
353 Sacramento St., Suite 1120
San Francisco, California 94111
Telephone (415) 402-0084
Facsimile (415) 520-0104

Attorneys for Plaintiffs
ARTHUR M. SMITH IV, RICHARD TRAN, and
AARON T. MOODY

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR M. SMITH IV, RICHARD TRAN, and AARON T. MOODY<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED AIRLINES, INC.; the INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, LOCAL LODGE 1781; and DOES 1 to 10.<br><br>Defendants. | Case No.:   3:14-cv-01763-EDL<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**(1)   BREACH OF CONTRACT**<br><br>**(2)   BREACH OF DUTY OF FAIR REPRESENTATION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Arthur M. Smith IV, Richard Tran, and Aaron T. Moody (collectively, "Plaintiffs") file this Complaint against United Airlines, Inc. ("UAL") and the International Association of Machinists and Aerospace Workers, Local Lodge 1781 ("IAMAW") (collectively, "Defendants").

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction over the breach of representation claim pursuant to 29 U.S.C. § 185, 28 U.S.C. §§ 1331 and 1337(a), and 28 U.S.C. §§ 2201 and 2202.  The Court has supplemental jurisdiction over Plaintiffs' related state law claim pursuant to 28 U.S.C. § 1367 because it arises out of the same transaction.

2.   Venue is proper in this Court as the acts complained of occurred within this Judicial District.

3. Plaintiffs have been damaged in excess of the jurisdictional amount of this Court.

## INTRODUCTION

4. This is an action for damages and injunctive relief for Breach of Contract and Breach of the Duty of Fair Representation. This action arises out of events involving Plaintiffs and Defendants UAL and IAMAW acting in concert to deny Plaintiffs their rights to be paid bargained-for wages.

## THE PARTIES

5. Plaintiff Arthur M. Smith IV ("Mr. Smith") is currently employed by UAL as a Ramp Serviceman at the San Francisco International Airport ("SFO").

6. Plaintiff Richard Tran ("Mr. Tran") is currently employed by UAL as a Ramp Serviceman at SFO.

7. Plaintiff Aaron T. Moody ("Mr. Moody") is currently employed by UAL as a Ramp Serviceman at SFO.

8. Defendant United Airlines, Inc. is a Delaware Corporation licensed to and doing business within this judicial district.

9. Defendant International Association of Machinists and Aerospace Workers ("AIMAW"), Local Lodge 1781 is a labor union operating in the State of California, County of San Francisco.

10. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1-10, inclusive, and Plaintiffs therefore sue such Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named Defendants is responsible in some manner for the occurrences, acts, and omissions alleged herein and that Plaintiffs' injuries as alleged herein were proximately caused by such aforementioned Defendants.

## FACTS COMMON TO ALL CAUSES

11. Plaintiffs are all currently employed by UAL as Ramp Servicemen and represented by IAMAW.

12. Plaintiff Smith has been a full-time employee of UAL since November 2006. Plaintiff Tran began working for United in 2004. In 2006, Plaintiff Moody began his employment with United in Denver. All three Plaintiffs began working for United in SFO in 2012.

13. Prior to working at SFO all of the Plaintiffs performed Lead Ramp Serviceman duties and were paid additional pay for such duties. When Plaintiffs arrived at SFO they performed Lead Ramp Serviceman duties and were denied addition pay for performance of such duties.

14. At all relevant times, the terms and conditions of Plaintiffs' employment with UAL were governed by the company-wide collective bargaining agreement, "Agreement Between United Airlines, Inc. and International Association Of Machinists And Aerospace Workers" ("Pre-2013 Agreement").

15. In relevant part, Article VI, Sections (A)-(B) of the Pre-2013 Agreement define the job responsibilities of the "Ramp Serviceman" and "Lead Ramp Serviceman" positions. Specifically, a Ramp Serviceman services aircraft at ramps and terminals involving the loading, stowing, unloading, and pick-up and delivery of all cargo. A Lead Ramp Serviceman performs the same job responsibilities as a Ramp Serviceman but additionally may be required to lead and direct the work of other employees of lower classifications, and to give instruction and training to employees of the same or lower classification.

16. Pursuant to Article XXVI, Schedule A of the Pre-2013 Agreement, Plaintiffs earned between $14.00-18.00 per hour as Ramp Servicemen, as based upon their seniority with UAL. The hourly rate for a Lead Ramp Serviceman is approximately $21.00 per hour.

17. If a regular Lead is unavailable, an upgrade Lead Ramp Serviceman is chosen on a daily basis to lead other Ramp Servicemen. This person is officially known as the upgrade Lead Ramp Serviceman and has the Lead Ramp Serviceman classification for one day only. For that day, the person's wages are increased to approximately $21.00 per hour.

18. Throughout Plaintiffs' employment with UAL, the difference between their pay as Ramp Servicemen and their pay as Lead Ramp Servicemen ranged between $5.00-7.00 per hour.

19. On any given day, there are frequently two or more work groups of Ramp Servicemen. In that case, one group will have an official Lead Ramp Serviceman, whereas the remaining group(s) have "unofficial" Card Person(s) who perform all of the duties of the Lead Ramp Serviceman position but do not receive the commensurate daily pay increase.

20. Since arriving at SFO, Mr. Smith, Mr. Tran, and Mr. Moody have each worked hundreds of days as unofficial Card Persons without the appropriate pay increases, even though all of them had received the pay increases while working in other airports as UAL employees and IAMAW members.

21. Plaintiffs began to complain to local management about local management's breach of the CBA related pay to Ramp Agents for performance of Lead Ramp Serviceman duties.

22. As a result of the Plaintiffs' complaints, in November, 2012, United's SFO local management team issued a "Briefing Bulletin" entitled "Card Person Responsibilities", which set forth United's practice of assigning "Card Person" duties without a commensurate increase in pay or upgrade to Lead Ramp Serviceman.

23. The "Card Person" Bulletin was contrary to the then-existing collective bargaining agreement regarding Lead pay.

24. On January 30, 2013, Christopher Lusk, on behalf of and at the the request of Plaintiff Smith filed a grievance concerning the Card Person Bulletin and the practice of denying upgrade Lead Ramp Serviceman pay at SFO.

25. Three business days later, Christopher Lusk, on behalf of and the request of Plaintiff Smith filed a second step grievance concerning the lack of a response or resolution of the January 30, 2013 grievance regarding the Card Person Bulletin and the practice of denying upgrade Lead Ramp Serviceman pay at SFO.

26. After the Union filed the second step grievance on behalf of Plaintiff Smith, several other Ramp Agents, including Plaintiffs Moody and Tran requested that the Union file a grievance on their behalf regarding the Lead pay for Ramp Agents who worked out of class.

27. Mr. Lusk informed Plaintiffs Smith, Moody, and Tran as well as other Ramp Agents that multiple grievances could not be filed simultaneously regarding the same work practices and that Plaintiff Smith's complaint would serve as the grievance for all of the Ramp Agents at SFO.

28. Mr. Lusk made it very clear to all of the Ramp Agents that as long as Plaintiff Smith's grievance was open no other grievances regarding Lead pay for Ramp Agents working out of class as Card Men would be considered by the Union.

**PLAINTIFF ARTHUR M. SMITH IV**

29. After the filing of the February, 2013 grievance, Plaintiff Smith made periodic inquiries of Mr. Ajetomobi, Mr. Wing, and Mr. Lusk, all executive members of the local Union as to the status of the grievances. The foregoing individuals requested that Plaintiff Smith wait until after the approval of the new contract to proceed with his January, 2013 and February 2013 grievances concerning Card Person pay.

30. Mr. Smith reluctantly agreed to such a procedure in light of the fact that 2013 was an election year and Mr. Smith anticipated changes to Union leadership.

31. In approximately, April 2013, Plaintiff Smith followed up with the Union again regarding the progress of the Ramp Agents' grievance, and Mr. Ajetomobi requested that Plaintiff Smith be patient with the Union process as Union President Mr. Wing had been in a car accident and was not available to address the grievance.

32. In or about April 30, 2013, Mr. Smith spoke with Mr. Ajetomobi regarding his original grievance, at which time Mr. Smith also notified him of his second grievance. Mr. Ajetomobi told Mr. Smith that he doubted that the Company would convene a hearing on either grievance. Mr. Ajetomobi told Mr. Smith that it was his belief that UAL was operating properly according to Agreement procedures.

33. In August 2013, after speaking with his co-workers, Mr. Smith spoke with Mr. Ajetomobi and IAMAW President Larry Wing ("Mr. Wing") multiple times regarding the unfair treatment regarding pay for Ramp Agents performing Lead duties. On each occasion, Mr. Wing and Mr. Ajetomobi sided with UAL.

34. Despite these interactions, Defendant IAMAW did not inform Plaintiff Smith regarding a resolution of his January 2013 and February 2013 grievances.

35. On August 23, 2013, Plaintiffs counsel wrote a letter requesting that IAMAW commence a new grievance process on the issue of Card Person pay.

36. Plaintiffs' request was made with the intent to get a resolution to Smith's grievance which would allow other Ramp Agents the opportunity to grieve issues related to Ramp Agent pay. IAMAW never responded to Plaintiffs' counsel August 23, 2013 letter.

37. On November 1, 2013, a new collective bargaining agreement became effective between United and IAMAW, covering the Plaintiffs' employment in this matter, entitled "Storekeeper Employees 2013 – 2016 Agreement Between United Airlines and the International Association of Machinists and Aerospace Workers " ("2013 Agreement"), eliminating the Card Person pay issue.

38. Defendant IAMAW has a policy, pattern, and practice of allowing only one of its members to grieve a particular workplace practice or policy at any given time, and will not prepare nor file the grievance of any other member of the union while a grievance of a particular work practice or policy is still pending.

39. As set forth below, Defendant IAMAW held and continues to hold Plaintiff Smith's January and February 2013 grievances without formal closure or resolution; thereby prohibiting any other union member from filing a formal grievance concerning the workplace practices set forth above.

40. In November, 2013 a new contract was approved, effectively rendering as moot Plaintiffs' grievance.

41. As a direct result of Defendant IAMAW's policy, practice, and procedure of holding Plaintiff Smith's grievance open while simultaneously rejecting the filing of any other grievance concerning Card Person pay throughout 2013 through the ratification of the new contract with United November, 2013, Plaintiffs have been prevented from formal resolution of the Card Person pay issue.

42. As a direct result of Defendant IAMAW's policy, practice, and procedure of holding grievances open to prohibit the filing and resolution of grievances, Plaintiffs have been damaged under both the Pre-2013 Agreement and the 2013 Agreement, as the failure to resolve the Card Person pay issue has prohibited Plaintiffs from being grandfathered into a more desirable pay structure in the 2013 Agreement.

## PLAINTIFF RICHARD TRAN

43. In May 2004, Mr. Tran started working for UAL in San Diego, where he stayed until January 2012. From January 2012 to the present, Mr. Tran has been employed by UAL at SFO.

44. During his time in San Diego, Mr. Tran worked numerous times as an upgrade Lead Person and received the appropriate pay increase.

45. When his first week at SFO in January 2012, however, Mr. Tran noticed that Lead Ramp Servicemen regularly delegated all of their work to Ramp Servicemen, whom did not receive the appropriate daily pay increase.

46. Between January 2012 and November 2013, Mr. Tran was sporadically assigned to perform the job duties of a Card Person but only sometimes paid him the correct daily rate.

47. In 2012 alone, even though he was paid the appropriate daily pay increase as the official Lead Ramp Serviceman approximately 175 times, he was assigned to be an unofficial Card Person approximately 100 times without the pay increase.

48. When Mr. Tran started at SFO, his earned approximately $15.44 per hour. Currently, his hourly pay rate is approximately $17.98.

49. In early February 2013, Mr. Tran filed a grievance with IAMAW regarding the lack of appropriate compensation for performing Card Person responsibilities.

50. A couple days later, IAMAW Shop Steward Christopher Lusk ("Mr. Lusk") orally denied Mr. Tran's grievance and reiterated the phrase, "this is the way it's done in San Francisco," or words to that effect. Specifically, Mr. Lusk informed Plaintiff Tran that Plaintiff Smith's grievance would serve as the grievance for all Ramp Agents with disputes regarding lead pay and that the Union would not consider any other grievances on the issue while Smith's grievance was outstanding.

51.     Throughout 2013, Plaintiff Tran checked in with Plaintiff Smith regarding the status of the Ramp Agents' grievance.

52.     Plaintiff Smith informed Plaintiff Tran in August of 2013 that the grievance was likely to be resolved without a hearing and he would keep Plaintiff Tran informed on the progression of the grievance.

53.     On November 2013, the new Union contract was voted in, which changed the pay structure regarding Ramp Agents duties.  At this time Plaintiffs Smith, Moody, and Tran decided that their grievance was ripe for judicial intervention.

54.     In or about December, 2013, a Town Hall Meeting to discuss the provisions of the new collective bargaining agreement and how it would affect the pay of Ramp Agents.

55.     During the Town Hall meeting, Plaintiffs Smith, Moody, and Tran addressed Union Leadership, and Troy Rivera, regional officer for IMAWA, concerning the subject matter of their outstanding grievance, and how the new collective bargaining agreement would negatively impact their pay without resolution of the matters articulated in their grievance.

56.     Plaintiffs Smith and Moody were informed that there was nothing further that IMAWA could do on their behalf.

### PLAINTIFF AARON T. MOODY

57.     In May 2006, Mr. Moody began his employment with UAL in Denver.  From approximately July 2006 to April 2007, he worked for UAL in Omaha, Nebraska.  He returned to Denver around April 2007, where he remained until around April 2012.  Since April 2012, Mr. Moody has worked for UAL at SFO.

58.     In 2008, while in Denver, Mr. Moody underwent training regarding minimum qualifications to work as a Lead Ramp Serviceman.  Thereafter, he worked as a upgrade Lead Ramp Serviceman/Card Person on numerous occasions.

59.     Also while Mr. Moody worked in Denver, the local lodge of the International Association of Machinists and Aerospace Workers protected its members by rejecting the implementation of the so-called "Card Man Rule," which would have permitted UAL to pay unofficial Lead Ramp Servicemen at the daily rate of Ramp Servicemen.

60. Prior to SFO, Mr. Moody had always received the appropriate daily pay increases whenever he performed upgrade Lead Ramp Serviceman responsibilities.

61. When Mr. Moody started in SFO, however, he immediately noticed the pay discrepancy. Since April 2012, he has been paid appropriately 40-50 days for performing Lead Ramp Serviceman duties. However, other than those days, Mr. Moody has unofficially performed Lead Ramp Serviceman responsibilities every work day at SFO but has not received the appropriate daily pay increase.

62. When Mr. Moody started at SFO, his wages as a Ramp Serviceman were approximately $13.36 per hour. His current rate of pay is approximately $14.40 per hour.

63. In early February 2013, Mr. Moody filed a grievance with IAMAW regarding the lack of appropriate compensation for performing Card Person responsibilities.

64. A couple days later, IAMAW Shop Steward Christopher Lusk ("Mr. Lusk") orally denied Mr. Moody's grievance. Specifically, Mr. Lusk informed Plaintiff Moody that Plaintiff Smith's grievance would serve as the grievance for all Ramp Agents with disputes regarding lead pay and that the Union would not consider any other grievances on the issue while Smith's grievance was outstanding.

65. Throughout 2013, Plaintiff Moody checked in with Plaintiff Smith regarding the status of the Ramp Agents' grievance.

66. Plaintiff Smith informed Plaintiff Moody in August of 2013 that the grievance was likely to be resolved without a hearing and he would keep Plaintiff Moody informed on the progression of the grievance.

67. On November 2013, the new Union contract was voted in, which changed the pay structure regarding Ramp Agents duties. At this time Plaintiffs Smith, Moody, and Tran decided that their grievance was ripe for judicial intervention.

/ / /

/ / /

/ / /

/ / /

9

FIRST AMENDED COMPLAINT 3:14-cv-01763-EDL

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (alleged by Plaintiffs against UAL)

68. As a first, separate and distinct claim, Plaintiffs complain of Defendant UAL, and for a claim, alleges:

69. The factual allegations of Paragraphs 1 through 67, above, are re-alleged and incorporated herein by reference.

70. Plaintiffs, by and through IAMAW, and Defendant UAL, by and through its agents, entered into the Agreement, a written contract that governed the terms of Plaintiffs' employment. As stated above, the relevant terms of the Agreement defined the job responsibilities of the "Ramp Serviceman" and "Lead Ramp Serviceman" positions. Additionally, as stated above, the Agreement provided that Lead Ramp Servicemen were paid approximately $5-7 more per hour than Ramp Servicemen.

71. Plaintiffs undertook employment and duly performed all of the conditions of the Agreement by continuing to work for Defendant UAL as dedicated employees.

72. Defendant UAL, acting in concert with IAMAW, breached the Agreement with Plaintiffs by not compensating them with the appropriate daily pay increase even though they had collectively worked hundreds of days for UAL as unofficial Lead Ramp Servicemen.

73. Plaintiffs suffered damages legally caused by the breach of contract as set forth below.

### SECOND CAUSE OF ACTION
### BREACH OF DUTY OF FAIR REPRESENTATION
### (alleged by Plaintiffs against IAMAW)

74. As a second, separate and distinct claim, Plaintiff complains of Defendant IAMAW, and for a claim, alleges:

75. The factual allegations of Paragraphs 1 through 73 above are re-alleged and incorporated herein by reference.

76. Jurisdiction arises under 29 U.S.C. § 185, 28 U.S.C. §§ 185, 28 U.S.C. §§ 1331 and 1337(a), and 28 U.S.C. §§ 2201 and 2202.

77. Throughout their employment with UAL, Plaintiffs were represented as union members by IAMAW.

78. At all relevant times, UAL and IAMAW were parties to the Agreement, which governed Plaintiffs' employment. The Agreement was entered into for the benefit of the employees of Defendant UAL. Plaintiffs were UAL employees entitled to the benefits of the Pre-2013 Agreement, including its pay scale, as set by Article XXVI, Schedule A.

79. Plaintiffs allege that as the exclusive bargaining agent for Plaintiffs, IAMAW had a duty to represent Plaintiffs fairly in enforcing their rights under the Agreement with UAL, namely the right to receive the appropriate daily compensation for performing Lead Ramp Serviceman responsibilities.

80. As stated above, while working at airports other than SFO, each of the Plaintiffs received the appropriate pay increase and/or IAMAW representation regarding compensation for performing Lead Ramp Serviceman responsibilities.

81. Defendant IAMAW has acted in concert with UAL to suppress the appropriate compensation owed to Ramp Servicemen at SFO per the Agreement by unambiguously and intentionally refusing to bring any of Plaintiffs' grievances to the attention of UAL, commonly repeating the phrase, "this is the way it's done in San Francisco," or words to that effect, thereby implicitly acknowledging that UAL's practices, and IAMAW's lack of representation, are not consistent with other airports.

82. Defendant IAMAW has also acted in concert with UAL to suppress Plaintiff's grievances concerning appropriate compensation owed to Ramp Servicemen at SFO by leaving Plaintiff Smith's grievance open, never formally closing it, and applying a policy, practice and procedure to not permit any other grievances to be filed concerning the same workplace practice, with no intent of resolving the initial grievance.

83. By their grievances, Plaintiffs have exhausted all available avenues of relief which are warranted under the circumstances, and any other or further attempts would be inadequate or futile.

84. Plaintiffs seek preliminary and permanent injunctive relief enjoining Defendants UAL and IAMAW from failing to compensate Plaintiffs at the appropriate daily rate for performing Lead Ramp Serviceman work.

85. In so doing, IAMAW, acting in concert with UAL, engaged in affirmative and intentional conduct, not mere negligence, which was not in the interests of Plaintiffs, its union members, and which breached the duty of fair representation which IAMAW owes all its members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1. For general damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this court;
2. For special damages in amounts according to proof;
3. For injunctive relief enjoining UAL to compensate Plaintiffs at the appropriate daily rate whenever they perform Lead Ramp Serviceman responsibilities;
4. For attorneys' fees as provided by law;
5. For interest as provided by law;
6. For costs of suit herein; and
7. For such other and further relief as the Court deems fair and just.

Dated: June 23, 2014                                SMITH PATTEN


By: ___/s/ Dow W. Patten___
SPENCER F. SMITH
DOW W. PATTEN
Attorneys for Plaintiffs
ARTHUR M. SMITH IV, RICHARD TRAN, and AARON T. MOODY

/ / /

/ / /

/ / /

/ / /

**JURY DEMAND**

Plaintiffs hereby demand trial by jury of all matters so triable.

Dated: June 23, 2014

SMITH PATTEN

By: ___/s/ Dow W. Patten___
SPENCER F. SMITH
DOW W. PATTEN
Attorneys for Plaintiffs
ARTHUR M. SMITH IV, RICHARD TRAN, AND AARON T. MOODY