IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR M. SMITH IV, et al., | No. C -14-01763(EDL) |
| Plaintiffs, | **ORDER ON DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| UNITED AIRLINES, INC., et al., | |
| Defendants. | |

Defendants each brought separate motions to dismiss based on similar arguments. For the reasons set forth below, Defendants' motions are GRANTED.

**I. Factual Allegations and Procedural History**

This case stems from Plaintiffs' compensation dispute with their employer, Defendant United Airlines, Inc. ("United"), and their union, Defendant International Association of Machinists and Aerospace Workers ("Union"). Plaintiffs are ramp servicemen who currently work at San Francisco International Airport ("SFO"), but who have worked previously for United at other airports. (Cmplt. ¶¶ 5-7.) Ramp servicemen handle the "loading, stowing, unloading, and pick-up and delivery of all cargo." (Id. ¶ 15; Reardon Decl. Ex. 1 (hereinafter "Collective Bargaining Agreement" or "CBA") at 6.)[1] Lead ramp servicemen perform the same functions and also may be required "to lead and direct the work of other employees of lower classifications" and "to give instruction and training." (Cmplt. ¶ 15; CBA at 6.) Lead ramp servicemen are compensated at a higher rate of pay than ramp servicemen. (Cmplt. ¶ 16; CBA at 101.)

Plaintiffs allege that when lead ramp servicemen are unavailable, ramp servicemen typically fulfill their role and are compensated as lead ramp servicemen during that time. (Cmplt. ¶ 17.)

---

[1] Although not attached to Plaintiffs' complaint, Defendant United submitted the CBA as an exhibit in support of its motion to dismiss. Because the complaint refers to the CBA, which is central to Plaintiffs' claims, and no party questions its authenticity, the Court finds that it can properly consider the CBA. See United States v. Corinthian Colleges, 655 F.3d 984, 999 (9th Cir. 2011).

Plaintiffs allege that prior to working at SFO, they worked for United in other cities and were paid as lead ramp servicemen when they fulfilled those duties. (Id. ¶ 13.) However, Plaintiffs allege that they have been denied this additional pay since beginning work at SFO. (Id.)

Plaintiff Smith allegedly filed a grievance on January 30, 2013, concerning this issue and, upon failure to reach a resolution, filed a second step grievance three days later. (Id. ¶¶ 24-25.) Smith alleges that he "made periodic inquiries" regarding the status of his grievance and was told to "wait until after the approval of the new contract to proceed." (Id. ¶ 29.) On or about April 30, 2013, Smith alleges that he was told by an executive member of the Union that he "doubted that the Company would convene a hearing on either grievance." (Id. ¶ 32.) In August 2013, Smith alleges that he spoke with the same executive member and the Union president "multiple times . . . . [and] [o]n each occasion [they] sided with [United]." (Id. ¶ 33.) Additionally, Smith alleges that the executive member told him that "it was his belief that [United] was operating properly according to Agreement procedures." (Id.) Furthermore, on August 23, 2013, Smith alleges that his counsel wrote a letter, which was never answered, requesting that the Union commence a new grievance process related to this issue. (Id. ¶ 35.)

Plaintiffs Tran and Moody allege that they also filed grievances during this time. Upon filing their grievances in February 2013, these Plaintiffs allege that they were "orally denied" and that they were told "this is the way it's done in San Francisco." (Id. ¶¶ 50, 64.) Furthermore, they allege that they were told that because Smith had previously filed a grievance on this issue, "Smith's grievance would serve as the grievance for all ramp Agents with disputes regarding lead pay and that the Union would not consider any other grievances on the issue." (Id.)

On November 1, 2013, Plaintiffs allege that "a new collective bargaining agreement became effective between United and [the Union]" that "effectively render[ed] as moot Plaintiffs' grievance." (Id. ¶¶ 37, 40.) Plaintiffs allege that they have consequently been damaged because the failure to resolve the issue "has prohibited Plaintiffs from being grandfathered into a more desirable pay structure" in the new CBA. (Id. ¶ 42.)

On April 16, 2014, Plaintiffs filed this action alleging claims for breach of duty of fair representation against Defendant Union and breach of contract against Defendant United. After

1  Defendants moved to dismiss the original complaint, Plaintiffs filed their first amended complaint on
2  June 23, 2014. On July 7, 2014, Defendants filed the present motions to dismiss.

## II. Standard

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

## III. Statute of Limitations

Plaintiffs bring a "hybrid" claim for breach of duty of fair representation against the Union and breach of contract against United. See West v. Conrail, 481 U.S. 35, 37-38 (1987); Delcostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983). Such claims are subject to a six-month statute of limitations. Delcostello, 462 U.S. at 169-170; Lea v. Republic Airlines, Inc., 903 F.2d 624, 633 (1990). "[T]he six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union." Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th Cir. 1986); Miletak v. Commc'n Workers of America, No. 13-CV-4865 (SI), 2014 WL 1616439, at *3 (N.D. Cal. April 22, 2014); Williams v. UAL, No. 12-CV-3781 (YGR), 2012 WL 6523409, at *3 (N.D. Cal. Dec. 13, 2012).

Plaintiffs filed their complaint on April 16, 2014, and argue that their claims are timely because they accrued when the new CBA was adopted in November 2013.[2] In contrast, Defendants

---

[2]Plaintiffs also appear to argue, in the alternative, that their claims have not yet accrued:

"To date, Plaintiffs have yet to receive any communication from the Union regarding the resolution of the grievance. . . . For all Plaintiffs

3

argue that Plaintiffs' claims are untimely because they accrued, at the latest, in August 2013.

Plaintiffs chiefly rely on Galindo, arguing that if the statute of limitations period began running prior to November 2013, it was tolled up until that time because they were pursuing their grievances with the Union. See Galindo, 793 F.2d at 1510-11. However, Galindo only stands for the proposition that the statute of limitations is tolled while grievances are being pursued as mandated by the collective bargaining agreement. See Conley v. Int'l Bhd. of Elec. Workers, 810 F.2d 913, 915 (9th Cir. 1987) ("Equitable tolling is most appropriate when the plaintiff is required to avail himself of an alternate course of action as a precondition to filing suit."); Magallanez v. Engineers & Scientists of Calif., 2012 WL 2872816, at *4 (E.D. Cal. July 11, 2012) ("[T]he statute of limitations [is] tolled in hybrid cases only in situations where the plaintiff is required to pursue another course of action before filing suit. To allow tolling when the plaintiff's out-of-court actions [are] merely optional 'would frustrate the national policy of prompt resolution of labor disputes.'" (quoting Walker v. Boeing Corp., 218 F. Supp. 2d 1177, 1196 (C.D. Cal. 2002) (quoting Conley, 810 F.2d at 915))). Tolling does not apply after Plaintiffs knew or should have known that their grievances were not being pursued further by Defendants because, at that point, Plaintiffs' claims

---

> know, [the Union] and United may have an unlimited agreement to extend the time for hearing Plaintiffs' appeal, and may still decide to convene a hearing. . . . Several other Ninth Circuit cases have found accrual of a [duty of fair representation] claim upon receipt of a written correspondence from the union that the plaintiff's grievance would not be pursued any further." (Opp. to Union Mot. at 4-5; Opp. to United Mot. at 4-5.)

The cases Plaintiffs cite in support of this argument do not hold, as Plaintiffs suggest, that accrual can *only* occur upon receipt of written correspondence that a grievance will not be pursued. Rather, these cases simply hold that receipt of such correspondence is sufficient for a claim to accrue. See Gant v. McDonnel Douglas Corp., 163 F.3d 1136, 1138 (9th Cir. 1998); Zuniga v. United Can Co., 812 F.2d 443, 449 (9th Cir. 1987); Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044, 1049 (9th Cir. 1987); Miletak, 2014 WL 161439, at *3. Indeed, "to say . . . that the running of the statute of limitations will be postponed indefinitely until actual notification is received from the Union or the employer, would be contrary to the policy of prompt resolution. Lack of notification would leave claims unresolved indefinitely and leave the procedure open to all of the vices which statutes of limitations were intended to eliminate." Metz v. Tootsie Roll Indus., Inc., 715 F.2d 299, 304 (7th Cir. 1983) (case cited approvingly in Mediran v. Int'l Ass'n of Machinists & Aerospace Workers, 425 F. App'x 550, 551 (9th Cir. 2011) and Lacina v. G-K Trucking, 602 F.2d 1190, 1192 (9th Cir. 1986)). Furthermore, if Plaintiffs' argument was correct, the complaint would have to be dismissed because Plaintiffs' claims would not yet be ripe. Addington v. U.S. Airlines Pilots Ass'n, 606 F.3d 1174, 1179-80 (9th Cir. 2010); see also Clayton v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of America, 451 U.S. 679, 685-87 (1981) (employees must exhaust contractual grievance procedures prior to filing suit).

1  were no longer being pursued as mandated by the collective bargaining agreement.  (See CBA at 51-
2  55 (outlining the mandatory grievance procedures).)
3        Plaintiffs further argue that the statute of limitations was either tolled or did not start running
4  until November 2013 on the basis that Union officials allegedly "requested that Plaintiff Smith wait
5  until after the approval of the new contract to proceed with" his grievances.  (Cmplt. ¶ 29.)
6  However, Plaintiffs have failed to plead sufficient facts to support this argument.  The CBA provides
7  specified time limits for pursuing grievances, after which time "the procedure shall be considered
8  closed."  (See CBA at 51-52 (outlining the time limits for step one and two grievances).)  The
9  agreement only allows for an extension of these specified time limits by mutual agreement between
10 the Union and United.  (Id. at 51 ("[C]omplaints must be lodged promptly after the cause giving rise
11 to the incident. . . . Any answers in writing within the specified time limits at any step of the
12 procedure shall be considered closed on the basis of such answer, unless time limits have been
13 extended by mutual agreement.").)  Yet, Plaintiffs allege that the Union "unambiguously and
14 intentionally refus[ed] to bring any of Plaintiffs' grievances to the attention of [United.]" (Cmplt. ¶
15 81.)  The fact that United was unaware of Plaintiffs' grievances necessarily precludes an agreement
16 with United to extend the time limits for the resolution of those grievances.  Consequently, Plaintiffs
17 should have been aware that no such agreement existed; indeed, knowledge of this grievance
18 procedure is attributable to Plaintiffs.  Hu v. John Hancock Mut. Life Ins. Co., 1997 WL 76175, at
19 *4 (9th Cir. Feb. 21, 1997) ("[I]t is settled law that an employee has an affirmative obligation to be
20 familiar with the grievance/arbitration procedures established under a collective bargaining
21 agreement."); Evangelista v. Inlandboatmen's Union of Pacific, 777 F.2d 1390, 1397 (9th Cir. 1985)
22 ("Union members have a duty to become aware of the nature and availability of union remedies.");
23 cf. Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1214 (9th Cir. 1980) ("An employee's ignorance
24 of the appeals procedure does not generally excuse his failure to exhaust internal union remedies,
25 even if the union failed to inform him of the possibility.").  This is especially true given that, by
26 August 2013, Smith retained counsel for this issue.  Cmplt. ¶ 23; Hardesty v. Essex Grp., Inc., 550
27 F. Supp. 752, 760 (N.D. Ill. 1982) ("Plaintiff, as an employee subject to the terms of the Agreement,
28 can fairly be charged with knowledge of its terms. . . . This is even more so once plaintiff has

**United States District Court**
**For the Northern District of California**

5

retained the services of able counsel."). Additionally, although Plaintiffs argue that they were "justified in their belief that [the Union] and United had come to some agreement" to extend the deadlines (Opp. to United Mot. at 4; see also Opp. to Union Mot. at 4), Plaintiffs do not actually allege such a belief or an adequate basis therefor in their complaint; rather, the complaint merely alleges that Smith was told by Union officials to wait until the new contract to pursue his grievances. (Cmplt. ¶ 29.) This is both insufficient and inconsistent with Plaintiffs' allegations that United had no knowledge of Plaintiffs' grievances.

In contrast, Defendants argue that Plaintiffs, at least by August 2013, were on notice that the Union was not pursuing their grievances. Plaintiffs allege that, in April 2013, Smith was told by a Union official that "it was his belief that [United] was operating properly according to Agreement procedures" and that "he doubted that [United] would convene a hearing on either grievance." (Id. ¶ 32.) Furthermore, Smith alleges that he spoke with Union officials "multiple times" in August 2013 and "[o]n each occasion" the officials "sided with [United]." (Id. ¶ 33.) Additionally, Plaintiffs allege that Tran was told that his grievance was denied on the basis that "this is the way it's done in San Francisco," that he and Moody were told that the Union would only pursue Smith's grievance, and that Moody and Tran consequently followed the progress of Smith's grievance. (Id. ¶¶ 50-51, 64-65.) Because of this prolonged period of inaction, Defendants argue that Plaintiffs should have figured out that the Union was not pursuing Smith's grievance. See Mediran, 425 F. App'x at 551 (9th Cir. 2011) ("When a union does not process a grievance for an extended period, the limitations period may well commence, even if the union has not expressly stated that it will not process the grievance."); Pantoja v. Holland Motor Exp., Inc., 965 F.2d 323, 327 (7th Cir. 1992) ("Prolonged inaction is sufficient to give a diligent plaintiff notice that the union has breached its duty of fair representation."); Metz, 715 F.2d at 304; see also Vadino v. A. Valey Engrs., 903 F.2d 253, 260 (3d Cir. 1990) ("the statute of limitations begins to run when 'the futility of further union appeals became apparent or should have become apparent'" (quoting Scott v. Local 863, Int'l Bhd. of Teamsters, 725 F.2d 226, 229 (3d Cir. 1984))). Here, although Smith was told to wait until the new contract was finalized, during this delay, all of Plaintiffs allegations indicate that the Union was not processing Plaintiffs' grievances. Plaintiffs should have been aware, at least by August 2013 when

6

Smith retained counsel, that no agreement had been reached pursuant to the CBA to extend the time limit for pursuing Smith's grievance. See Hardesty, 550 F. Supp. at 760; Leorna, 105 F.3d at 551. Indeed, Plaintiffs not only fail to allege that such an agreement had been reached, but also, all of Plaintiffs allegations, other than the fact that Smith was told to wait, support a conclusion that the Union was not pursing Plaintiffs' grievances. The statute of limitations on Plaintiffs' claims therefore began to run sometime after the time provided in the collective bargaining agreement for the resolution of grievances and certainly by August 2013, when Smith retained counsel and was told "multiple times" by union officials that they "sided with [United]." (Cmplt. ¶ 33.) Because Plaintiffs did not file their complaint until April 2014, their claims are barred by the statute of limitations.[3]

**IV. Conclusion**

As stated at the August 12, 2014 hearing, Defendants' motions to dismiss are GRANTED. Plaintiffs' complaint is dismissed with leave to amend. The deadline set at the hearing for filing an amended complaint is extended to August 29, 2014.

**IT IS SO ORDERED.**

Dated: August 22, 2014

_____
ELIZABETH D. LAPORTE
United States Chief Magistrate Judge

---

[3]Because the Court finds that Plaintiffs' claims are time barred, there is no need to address Defendants' other arguments.