1  SMITH PATTEN
   SPENCER F. SMITH, ESQ. (SBN: 236587)
2  DOW W. PATTEN, ESQ. (SBN: 135931)
   353 Sacramento St., Suite 1120
3  San Francisco, California 94111
   Telephone (415) 402-0084
4  Facsimile (415) 520-0104

5  Attorneys for Plaintiffs
   ARTHUR M. SMITH IV, RICHARD TRAN, and
6  AARON T. MOODY

7              **UNITED STATES DISTRICT COURT**

8          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9

10 ARTHUR M. SMITH IV, RICHARD TRAN,        Case No.:   3:14-cv-01763-EDL
   and AARON T. MOODY, on behalf of
11 themselves and all others similarly situated,   **SECOND AMENDED COMPLAINT
                                                   FOR DAMAGES AND INJUNCTIVE
12             Plaintiffs,                         RELIEF**

13       vs.                                       **(1)   BREACH OF CONTRACT**

14 UNITED AIRLINES, INC.;                          **(2)   BREACH OF DUTY OF FAIR
   the INTERNATIONAL ASSOCIATION OF                       REPRESENTATION**
15 MACHINISTS AND AEROSPACE
   WORKERS; the INTERNATIONAL
16 ASSOCIATION OF MACHINISTS AND                   **JURY TRIAL DEMANDED**
   AEROSPACE WORKERSLOCAL LODGE
17 1781; and DOES 1 to 10.

18             Defendants.

19       Plaintiffs Arthur M. Smith IV, Richard Tran, and Aaron T. Moody (collectively,

20 "Plaintiffs") file this Complaint against United Airlines, Inc. ("UAL") and the International

21 Association of Machinists and Aerospace Workers, Local Lodge 1781 ("IAMAW") (collectively,

22 "Defendants").

23              **JURISDICTION AND VENUE**

24 1.      Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring Claims I and II as a class action on behalf

25 of themselves and all other similarly situated current and former employees of United Airlines,

26 Inc.

27 2.      This Court has jurisdiction over the breach of duty of fair representation claim pursuant

28 to 29 U.S.C. § 185, 28 U.S.C. §§ 1331 and 1337(a), and 28 U.S.C. §§ 2201 and 2202.  The Court

1

1  has supplemental jurisdiction over Plaintiffs' related state law claim pursuant to 28 U.S.C. §

2  1367 because it arises out of the same transaction.

3  3.      Venue is proper in this Court as the acts complained of occurred within this Judicial

4  District.

5  4.      Plaintiffs have been damaged in excess of the jurisdictional amount of this Court.

6                                          **INTRODUCTION**

7  5.      This is an action for damages and injunctive relief for Breach of Contract and Breach of

8  the Duty of Fair Representation.  This action arises out of events involving Plaintiffs and

9  Defendants UAL and IAMAW acting in concert to deny Plaintiffs their rights to be paid

10  bargained-for wages, and accrue bargained-for longevity and seniority.

11                                        **CLASS ALLEGATIONS**

12  6.      Plaintiffs sue individually and as representatives of a class pursuant to Fed. R. Civ. P.  23.

13  The class is defined as all persons (1) who worked at the SFO airport location as Ramp

14  Servicemen at any time during the time period 2011 to December 2013, who performed Lead

15  Ramp Serviceman duties without receiving Lead Ramp Serviceman pay, longevity, or seniority.

16  7.      The claims, if certified for class-wide treatment, may be pursued by all similarly situated

17  persons who do not opt out of the Class.

18  8.      Plaintiffs, individually and behalf of all others similarly situated, seek relief on a class

19  basis challenging Defendant IAMAW's breach of the duty of fair representation and  UAL's

20  breach of contract claims as a hybrid claim under

21  9.      Upon information and belief, the class consists of approximately 100 United Airlines,

22  Inc. Ramp Servicemen employees, making the class sufficiently numerous that joinder of all

23  members is impractical.

24  10.     The number and identity of other potential class members may be determined from

25  Defendant's records and potential class members may be readily notified of the pendency of the

26  action.

27  11.     The acts complained of herein affected all class members, creating questions of law and

28  fact common to the entire class.  Questions of law and fact common to members of the Class

SECOND AMENDED COMPLAINT                                    3:14-cv-01763-EDL

predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.   Questions of law and fact common to Plaintiffs and the class include:

a. whether UAL employed members of the class; b. whether IAMAW represented members of the class;

c. whether UAL breached the Collective Bargaining Agreement;

d.  whether IAMAW breached the duty of fair representation in failing to represent the Class;

e.  whether the class has been damaged by the acts and omissions of UAL and IAMAW.

12.     The individually named Plaintiffs have a commonality of interests, having suffered the same injuries shared by all class members.

13.     The claims of the individually named Plaintiffs are typical of, and do not conflict with, the claims of other class members.

14.     The class representatives have the same interest in pursuing this action as the members of the class and will fairly and adequately protect the interests of the class.

15.     The class representatives hold the same job title in the same work location, and Plaintiffs have retained qualified counsel experienced in class-action and employment practice to represent them in this matter.

16.     Separate actions brought by various class members would create a risk of inconsistent rulings with respect to individual class members that would establish incompatible standards of conduct for all parties.

17.     Furthermore, decisions with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the individual suits.

18.     All claims arise from the same events. Plaintiffs are seeking back pay, longevity, and seniority rights that were wrongfully denied to members of the class.

19.     IAMAW and UAL have acted and refused to act on the same basis that applies generally to the class; as such, injunctive and declaratory relief are appropriate with respect to the entire class.

20.     Plaintiffs have no interest that is contrary to or in conflict with members of the class.

## THE PARTIES

21.     Plaintiff Arthur M. Smith IV ("Mr. Smith") is currently employed by UAL as a Lead Ramp Serviceman at the San Francisco International Airport ("SFO").

22.     Plaintiff Richard Tran ("Mr. Tran") is currently employed by UAL as a Lead Ramp Serviceman at SFO.

23.     Plaintiff Aaron T. Moody ("Mr. Moody") is currently employed by UAL as a Lead Ramp Serviceman at SFO.

24.     Defendant United Airlines, Inc. is a Delaware Corporation licensed to and doing business within this judicial district.

25.     Defendant International Association of Machinists and Aerospace Workers is a labor union operating in the State of California, County of San Francisco.

26.     Defendant International Association of Machinists and Aerospace Workers Local Lodge 1781 is a labor union operating in the State of California, County of San Francisco.

27.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1-10, inclusive, and Plaintiffs therefore sue such Defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe and thereon allege that each of these fictitiously named Defendants is responsible in some manner for the occurrences, acts, and omissions alleged herein and that Plaintiffs' injuries as alleged herein were proximately caused by such aforementioned Defendants.

## FACTS COMMON TO ALL CAUSES

28.     Plaintiffs are all currently employed by UAL as Lead Ramp Service Employees and represented by IAMAW.

29.     In October, 2010, the predecessor entities to Defendant United Airlines Inc., to wit, United Air Lines, Inc. and Continental Airlines, Inc. merged.  At the time of the merger, the Ramp Servicemen employed by Defendant United Airlines, Inc., were represented by IAMAW,

1  and the Ramp Servicemen employed by Continental Airlines, Inc., were represented by the

2  Teamsters.

3      30.     In or about August, 2011, the combined workforces of Ramp Servicemen at the newly

4  merged United/Continental airline voted on which union would represent the combined

5  workforce, resulting in IAMAW representing all Ramp Servicemen in the newly-merged

6  company.

7      31.     Between 2011 and November 2013, the terms and conditions of Plaintiffs' employment

8  with UAL continued to be governed by the company-wide collective bargaining agreement

9  entitled the "2005-2009 Agreement".

10     32.     Plaintiffs Smith, Moody and Tran began working at United's San Francisco International

11  Domicile in 2011 as Ramp Serviceman and were paid $13.26, $13.26, and $15.15 respectively

12  per hour.

13     33.     Pursuant to the 2005-2009 Agreement,  Ramp Serviceman duties are broken down into

14  two categories: "Ramp Serviceman" and "Lead Ramp Serviceman" with different pay schedules

15  and classifications.

16     34.     Article IV, Sections (A)-(B) of the 2005-2009 Agreement defines the job responsibilities

17  of the "Ramp Serviceman" and "Lead Ramp Serviceman" positions.

18     35.     According to the 2005-2009 Agreement,  a Ramp Serviceman is responsible for servicing

19  of aircraft at ramps and terminals including the loading, stowing, unloading, and pick-up and

20  delivery of all cargo including mail, express, baggage, freight, Company material, buffet and

21  food supplies in accordance with flight loading plans, the preparation of records in connection

22  therewith, interior cabin cleaning and setup and operation of automotive and other ramp

23  equipment for servicing aircraft, the preparation of loading plans, maintaining the ramp area and

24  equipment in a clean, presentable condition and other general ramp service work.  In addition to

25  the aforementioned tasks the Ramp Serviceman is responsible for the servicing of aircraft

26  and automotive equipment with fuel, lubricants and related supplies, including the operation of

27  fueling and lubricating equipment at ramps, shops and storage facilities.

28

SECOND AMENDED COMPLAINT                                    3:14-cv-01763-EDL

36.     The multiple and various duties of the Ramp Serviceman set forth in paragraph 34 above are not subject to any rights of seniority, as these duties are subject to a "Letter Agreement", numbered "Letter 74-8R May 24, 1974 Revised November 25, 1987",  and made a part of the 2005-2009 Agreement,  which sets forth a procedure for allowing individual Locals to suggest priorities and seniority for particular assignments of the various duties of Ramp Serviceman, and to negotiate the same on an individual and local basis.  The letter agreement is applies only to the job duties of the Ramp Serviceman, and makes no mention whatsoever of the Lead Ramp Serviceman position or duties.

37.     According to the 2005-2009 Agreement a Lead Ramp Serviceman performs the same job responsibilities as a Ramp Serviceman but additionally may be required to lead and direct the work of other employees of lower classifications, and to give instruction and training to employees of the same or lower classification.

38.     According to the 2005-2009 Agreement the number of employees that reported to a Lead Ramp Serviceman could consist of any number of employees but in no case could there be more than twelve (12) employees within this group.

39.     According to the 2005-2009 Agreement Article XI (A),

Vacancies of sixty (60) days or longer in the Lead Ramp Serviceman . . . shall be bulletined at the point where the vacancy exists and if not filled locally shall then be bulletined at all service stations, storerooms and warehouses where employees covered by this Agreement are employed. . . .

40.     According to the 2005-2009 Agreement Article XI (H),

. . . Employees temporarily transferred from their regular work to the work of any other classification covered by this Agreement shall receive their regular rate of pay or the minimum rate of the classification, plus longevity, whichever is the higher, for performing such work.

41.     According to the 2005-2009 Agreement Article XI (I),

In the case of vacancies not expected to exceed sixty (60) days, the Company may select an employee to fill such vacancy on a temporary basis without bulleting the job. In case of vacancies in higher classifications, the selection will be based on

seniority insofar as practical and wage claim will be paid where deviation from normal selection practice for temporary assignments is due to Company convenience.  At the end of sixty (60) days the vacancy will be filled as otherwise provided in this Agreement.  Exclusive of vacation requirements, when a Lead job in a work group for a full shift is regularly filled each work week by temporary upgrading an employee more than half time (more than 20 hours per week) for sixty (60) days, a permanent Lead vacancy will be bulletined and awarded.

42.     Between 2011 and November 2013 Lead Ramp Serviceman pay was $21.19 per hour.

43.     Between 2011 and November 2013, Plaintiffs at SFO were required to perform Lead Ramp Serviceman duties without being paid the minimum Lead Ramp Serviceman rate for the classification, as required by the 2005-2009 Agreement, Article XI (H).

44.     Between 2011 and November 2013, Plaintiffs were required to perform Lead Ramp Serviceman duties without accruing longevity, as required by the 2005-2009 Agreement, Article XI (H).

45.     Between 2011 and November, 2013, vacancies of sixty (60) days or longer in the Lead Ramp Serviceman existed routinely at the SFO hub; however, no vacancies were bulletined at any service stations, storerooms, or warehouses as required by the 2005-2009 Agreement, Article XI (A).

46.     Between 2011 and November, 2013, Lead Ramp Serviceman jobs in Plaintiffs' work groups for a full shift were regularly filled each work week without temporarily upgrading Plaintiffs and other Ramp Servicemen for more than 20 hours per week in excess of sixty (60) days; however, no permanent Lead Ramp Servicemen vacancies were either bulletined or awarded, in violation of  the 2005-2009 Agreement, Article XI (A) and (H).

47.     In approximately August 2012, Plaintiffs and other Ramp Serviceman began to complain to their supervisors that they were continuously required to perform Lead Ramp Serviceman duties without Lead Ramp Serviceman pay or longevity as required by the 2005-2009 Agreement, Article XI (H).

48.     Rather than comply with the express provisions of the 2005-2009 Agreement as set forth above, in November, 2012, Defendants created a completely new classification of Ramp Serviceman position, not set forth in the Classification of Positions, Article IV  and not

1  contemplated by the 2005-2009 Agreement or any Letter of Agreement attached thereto:  "Card-
2  Person".

3  49.      Upon information and belief, Defendants agreed to create and maintain the completely
4  new classification outside the express provisions of the 2005-2009 Agreement for an improper
5  purpose, in order to bide time until the ratification of the new 2013 Agreement, without paying
6  Plaintiffs and others similarly situated their bargained-for increases in wages and longevity.

7  50.      Upon information and belief, Defendant IAMAW Local 1781 agreed with Defendant
8  United Airlines, Inc., to maintain a status quo throughout the latter part of 2012 through 2013 by
9  holding in abeyance any grievances that would result in substantial changes to pay or seniority,
10  pending the negotiation and ratification of the 2013 Agreement.

11  51.      On any given day from 2011 through 2013,  there are frequently two or more work
12  groups of Ramp Servicemen worked at SFO.  In that case, one group will have an official Lead
13  whereas the remaining group(s) have "unofficial" Lead referred to as "Card Person(s)" who
14  perform all of the duties of the Lead Ramp Serviceman position but do not receive the
15  commensurate daily pay increase or allocation of longevity.

16  52.      In January 2013, Plaintiff Smith filed a grievance with IAMAW Local 1781 personnel,
17  Christopher Lusk regarding the Company's continued requirement that Ramp Serviceman
18  perform Lead duties without Lead pay or longevity.

19  53.      Three business days later, Christopher Lusk, at the request of Plaintiff Smith filed a
20  second step grievance concerning the lack of a response or resolution of Smith's January, 2013
21  grievance.

22  54.      Article XVIII of the 2005-2009 Agreement sets for a "Bargaining and Grievance
23  Procedure", which includes the following at Section A.:

24
25          Should a grievance occur, both the Union and the Company shall make an earnest
        effort to ascertain the facts and seek a fair and equitable settlement through the
26          following procedure.

27  55.      The  "Bargaining and Grievance Procedure", set forth in the 2005-2009 Agreement
28  specifically addresses the time for bringing grievances at Article XVIII at Section B:

SECOND AMENDED COMPLAINT                                    3:14-cv-01763-EDL

In order to document relevant facts, complaints must be lodged promptly after the cause giving rise to the incident. The Company shall have no monetary liability for any period beyond thirty (30) days prior to the filing of the complaint in writing. Any answers not appealed in writing within the specified time limits at any step of the procedure shall be considered closed on the basis of such answer, unless such time limits have been extended by mutual agreement. Grievances not answered within the specified time limits may be appealed to the next step of the procedure. Time limits for appeals and decisions, and System Board responses will be exclusive of Saturdays, Sundays, and Holidays.

56.     Plaintiff Smith filed a second level grievance in writing within the time period set forth in Article XVIII at Section B, not having received an answer to first level grievance.

57.     In the alternative, and upon information and belief, Defendants mutually agreed to extend the time limits of  Article XVIII of the 2005-2009 Agreement to extended the time limit for both the Company and the Union to comply with their specific obligations as set forth below, to address Plaintiff Smith's grievances until the 2013 Agreement was fully negotiated and ratified.

58.     The  "Bargaining and Grievance Procedure", set forth in the 2005-2009 Agreement specifically addresses the procedure for Step 2 grievances at Article XVIII at Section C:

1. An employee having a complaint should first discuss the matter with his Supervisor who will attempt to settle the matter.
2. If the issue is not satisfactorily resolved, he may request the Steward to handle the matter with the Supervisor.
3. If the matter is not resolved the Steward will reduce the facts to writing on a form provided by the Company. The Supervisor shall then have three (3) days to write his response. Each party shall get a copy of the completed form. Such document will not prejudice either party at future steps of the Grievance Procedure.

59.     Plaintiff Smith complied with the requirements of Article XVIII, Section C of the 2005-2009 Agreement by discussing the matter with supervisory authorities, then requesting Christopher Lusk to handle the matter.

60.     Upon information and belief, Union Steward Mr. Lusk reduced the facts to writing and the Company form and submitted it.  Upon information and belief, no supervisor responded to the grievance in writing or otherwise, nor did Defendant Local 1781 follow up to obtain a written response to enable the next level.

61.    The "Bargaining and Grievance Procedure", set forth in the 2005-2009 Agreement specifically addresses the procedure for Step 2 grievances at Article XVIII at Section D:

> The Local Committee shall determine if a grievance exists. If so, a grievance must be filed within fifteen (15) days from the Supervisor's written response. Such grievance will be filed on a standard form and shall be considered by the designated station or base management representative(s) and the Local Union Committee. Grievance hearings will be scheduled within fifteen (15) days of receipt of such appeal. The Local Committee may specify that a specific grievance shall be heard by the Department or Station Head rather than his designee. A written answer shall be provided within five (5) days after discussions have concluded. The Union may appeal the grievance to the next step of the procedure within fifteen (15) days from the date of the Company's written answer. Such appeal may contain any disputed facts or additional germane facts.

62.    Upon information and belief, the Local Committee neither considered nor determined whether a grievance existed as to Plaintiff Smith's Grievances, in violation of the specific requirements of Article XVIII of the 2005-2009 Agreement.   Defendants did so to subvert the consideration of the Ramp Serviceman being forced to perform Lead Ramp Serviceman duties without commensurate pay, longevity, and seniority until the 2013 Agreement was fully negotiated and ratified.

63.    No grievance hearing was scheduled by Defendants.  Upon information and belief, no discussions took place.  Upon information and belief, the Company provided no written answer, all in violation of the specific requirements of  Article XVIII  of the 2005-2009 Agreement.

64.    The "Bargaining and Grievance Procedure", set forth in the 2005-2009 Agreement specifically addresses the procedure for the Step 3 procedure as follows at Section E:

> If not settled, the grievance shall be reviewed by a representative(s) of the Human Resources Staff and the appropriate Assistant General Chairman. The review will be held within ten (10) days of perfecting such appeal. If unable to reach an agreement, and at the request of the Union, a Step Three Hearing will be scheduled within ten (10) days of the conclusion of the review process. The Company shall provide its written answer within fourteen (14) days from the meeting. If the Union decides to appeal the answer to the System Board, it will submit a written appeal perfecting all facts within forty (40) days from the Company s answer.

Copies of the appeal shall be sent to the appropriate labor relations officer and the System General Chairman.

65.     Defendants did not settle either of Plaintiff Smith's grievances, nor upon information and belief, did a representative of the Human Resources Staff and the appropriate General Chairman review Plaintiff Smith's grievances.  Upon information and belief, none of the Step 3 procedures were followed by Defendants with respect to Plaintiff Smith's grievance.

66.     Defendants' conscious decisions to flout the specific requirements of the "Bargaining and Grievance Procedure", set forth in the 2005-2009 Agreement and/or by mutual agreement indefinitely extend the timeframe for the Company to respond to Plaintiff Smith's grievances discriminated against the Ramp Servicemen at the SFO hub who were required to work out-of-classification without attendant pay, longevity, and seniority; whereas their co-worker Ramp Servicemen in other locations, such as Chicago ORD and Dulles International Airport, who were forced to perform Lead Ramp Serviceman duties were paid the substantial premium increase in wages, and received the attendant longevity and seniority required by the 2005-2009 Agreement.

67.     Defendants' conscious decisions to flout the specific requirements of the "Bargaining and Grievance Procedure",  set forth in the 2005-2009 Agreement and/or by mutual agreement indefinitely extend the timeframe for the Company to respond to Plaintiff Smith's grievances was not based upon any legitimate discretion or belief that Plaintiff Smith's grievances had no merit, since all other United Airlines locations provided under the 2005-2009 Agreement, Lead Ramp Serviceman pay, longevity, and seniority to all Ramp Servicemen forced to work out-of-classification as Lead Ramp Servicemen.

68.     In or about February, 2013, Plaintiff Moody was told by Mr. Ajetomobi, that his complaint concerning performing Lead Ramp Serviceman duties without commensurate pay or seniority was covered by Plaintiff Smith's grievances; therefore, IAMAW Local 1781 would not prepare another grievance in Plaintiff Moody's name.

69.     In or about February, 2013, Plaintiff Tran was told by Christopher Lusk, that his complaint concerning performing Lead Ramp Serviceman duties without commensurate pay or

1   seniority was covered by Plaintiff Smith's grievances; therefore, IAMAW Local 1781 would not

2   prepare another grievance in Plaintiff Tran's name.

3   70.    Defendants IAMAW have a policy, pattern, and practice of allowing only one of its

4   members to grieve a particular workplace practice or policy at any given time, and will not

5   prepare nor file the grievance of any other member of the union while a grievance of a particular

6   work practice or policy is still pending.

7   71.    Defendants IAMAW abused their policy, pattern, and practice of allowing only one of its

8   members to grieve a particular workplace practice or policy at any given time, not in the interests

9   of resolving a widespread contract issue expeditiously, but rather to ensure that all Ramp

10   Servicemen required to work out-of-classification without commensurate pay, seniority, and

11   longevity, would not be paid or accrue seniority, longevity ever, and certainly not until IAMAW

12   had replaced such lead pay with a negligible $1.75 per hour differential for Lead Ramp Service

13   Employees in the 2013 Agreement.

14   72.    Since arriving at SFO, Mr. Smith, Mr. Tran, and Mr. Moody have each worked hundreds

15   of days out-of-classification as Lead Ramp Servicemen without the appropriate pay increases,

16   longevity, or seniority required by the 2005-2009 agreement, and putative class members have as

17   well worked out-of-classification without commensurate pay, longevity, and seniority.

18   73.    Defendants IAMAW held and continue to hold Plaintiff Smith's January 2013 and

19   February 2013 grievances without formal closure or resolution; thereby prohibiting any other

20   union member from filing a formal grievance concerning the workplace practices set forth

21   above.

22   74.    Danny Lebron served as representative of the International Union in the geographic

23   region which included the Company's San Francisco domicile (District 141) as Assistant General

24   Chair. Among his principal duties were the negotiation, administration, and enforcement of the

25   successive collective bargaining agreements entered into by the International Union and the

26   Company.

27   75.    On August 23, 2013, counsel for Plaintiffs wrote a letter to Danny Lebron and to Larry

28   Wing, President of the Local Lodge 1781, on behalf of Ramp Servicemen at the SFO hub,

SECOND AMENDED COMPLAINT                                  3:14-cv-01763-EDL

including Plaintiffs, requesting that IAMAW commence a grievance process on the issue of Lead

pay.

76.     Upon information and belief, because Plaintiff Smith's January and February, 2013

grievances remained under a mutual agreement between Defendants to extend all deadlines for

the grievance, neither Local 1781 nor the IAMAW responded to Plaintiff's counsel's request,

based upon its policy, pattern and practice of not permitting any additional grievance from any

other union member challenging the same workplace practice while another member's grievance

remains pending.

77.     On November 1, 2013, a new collective bargaining agreement became effective between

United and IAMAW, covering the Plaintiffs' employment in this matter, entitled "Fleet Service

Employees 2013 – 2016 Agreement Between United Airlines and the International Association

of Machinists and Aerospace Workers (IAMAW)" ("2013 Agreement"), setting forth a temporary

Lead Ramp Service Employee process.

78.     The 2013 Union-Company contract provided as follows:

E. Temporary Assignments. Temporary assignments will be filled as outlined
below:

1. Short Duration Assignments. The Company can create and fill vacancies of
less than 60 days for any position within a classification with active employees
for any reason. Any such assignment of 60 days or more will be posted as a
vacancy as described in Section C above. Exclusive of vacation requirements,
when a Lead job in a work group for a full shift is regularly filled each workweek
by temporarily upgrading an employee more than half of the time for 60
consecutive days, a regular Lead vacancy will be bulletined and awarded. The
Company and the Union will meet to discuss extenuating circumstances that may
indicate a permanent Lead is not required for short-term operational needs or
unexpected outages.

79.     The 2013 Agreement provides for bid seniority retention by Lead Ramp Service

Employees as follows:

4. Bid Seniority Date. An employee's Bid Seniority begins on the date the
employee is placed on the Company's payroll for newly hired regular employees.

For Company employees transferring into this Agreement, Bid Seniority is the date an employee is notified that he or she is awarded an open vacancy. A common seniority date will be assigned when multiple positions are filled at the same time for the same vacancy. **For Lead positions, an employee will both: (a) retain and continue to accrue Bid Seniority in his or her basic classification; and (b) accrue Bid Seniority in the Lead position at the Location/Point beginning the day after the Lead vacancy posting closes**. Employees will stop accruing Bid Seniority and their date will be adjusted for periods of promoted status that exceed 183 days, and for periods on educational and personal leaves of absence that exceed 90 days. Bid Seniority is used for all types of bidding contained in this Agreement except for vacations.

80.     The 2013 Agreement does not contain a schedule of Lead Ramp Service Employee pay; rather, it sets "Lead Pay" as a $1.75 per hour premium or differential.  In contrast, the 2005-2009 Agreement set forth a separate schedule for Lead Ramp Serviceman pay that was substantially higher.

81.     As a direct result of Defendant IAMAW's policy, practice, and procedure of either flouting the specific grievance procedures as set forth above, or in the alternative holding Plaintiff Smith's grievance open while simultaneously rejecting the filing of any other grievance concerning Lead pay throughout 2013 through the ratification of the new contract with United November, 2013, Plaintiffs have been prevented from formal resolution of the grievance.

82.     As a direct result of Defendants' conduct, as set forth above, Plaintiffs have been damaged under both the 2005-2009 Agreement and the 2013 Agreement, as the failure to resolve Plaintiff Smith's grievance prohibited Plaintiffs and other similarly-situated SFO-based Ramp Servicemen from accruing pay, longevity, and seniority which would have grandfathered them into a higher pay structure, and the benefits of longevity and seniority in the various shift bidding, vacation, overtime, etc. set forth in the 2013 Agreement as allocated by seniority and longevity.

83.     Plaintiffs were not present in the contract negotiations between the Company and IAMAW throughout 2013, when the Lead Ramp Service Employee pay premium clause was first introduced into the collective bargaining agreement.

84.     Based upon Plaintiffs' and other Ramp Serviceman's complaints at SFO, Danny Lebron

1    and Richard Delaney knew the Company's position concerning Lead Ramp Serviceman staffing

2    and the creation of a "Card-Person" designation from the outset of the negotiations. This fact

3    was not made known to Plaintiffs at any time during the succeeding collective bargaining

4    negotiations.

5    85.    Danny Lebron and Richard Delaney knew that the entire pay and seniority allocation of

6    the 2013 Agreement was tainted to the detriment of these union member employees; and that

7    such bargaining for the 2013 Agreement with the Company was in bad faith.

8    **PLAINTIFF ARTHUR M. SMITH IV**

9    86.    Mr. Smith has been a full-time employee of UAL since November 2006. From

10    November 2006 to February 2008, he worked at SFO. From February 2008 to June 2008, he

11    worked in Dulles International Airport ("Dulles") in Washington D.C. From June 2008 to

12    August 2011, he worked in Chicago. He then returned to SFO but worked in another

13    subdivision. Mr. Smith has worked in his current position as a Ramp Serviceman at SFO since

14    around June 2012.

15    87.    In 2008, as a UAL employee and IAMAW member in both Dulles and Chicago, Mr.

16    Smith was paid the correct wage per the Agreement, approximately $21.00 per hour, whenever

17    he performed Lead Ramp Serviceman duties on a temporary basis.

18    88.    However, in 2011, when Mr. Smith returned to SFO, he first witnessed Ramp Servicemen

19    performing the Lead duties but not receiving the appropriate daily raise for their responsibilities.

20    89.    Between his first and second stints at SFO, Mr. Smith has worked at least 200 days as a

21    Lead and not received the wages, longevity, and seniority which attach to such temporary

22    assignments, pursuant to the 2005-2009 Agreement, Article. XI (H).

23    90.    During Mr. Smith's second stint at SFO, he earned approximately $13.36 per hour. He

24    currently earns $14.40 per hour.

25    91.    As set forth above, on or around January 31, 2013, Mr. Smith filed a grievance regarding

26    not receiving the proper pay, longevity, and seniority for working out-of-classification as Lead

27    Ramp Serviceman.

28

SECOND AMENDED COMPLAINT              3:14-cv-01763-EDL

92.     As set forth above, Defendants IAMAW did not follow the specific requirements of Article XVIII of the 2005-2009 Agreement, and/or in the alternative mutually agreed with the Company to extend indefinitely all time periods therein to  respond to Mr. Smith's grievance through the ratification of the 2013 Agreement, which substantially reduced the amounts Plaintiff would receive for Lead Ramp Serviceman (Employee) pay.

93.     In early February 2013, Mr. Smith filed a second grievance regarding IAMAW's failure to respond in a timely manner to his January 2013 grievance.

94.     As set forth above, Defendants IAMAW did not follow the specific requirements of Article XVIII of the 2005-2009 Agreement, and/or in the alternative mutually agreed with the Company to extend indefinitely all time periods therein to  respond to Mr. Smith's grievance through the ratification of the 2013 Agreement, which substantially reduced the amounts Plaintiff would receive for Lead Ramp Serviceman (Employee) pay.

## PLAINTIFF RICHARD TRAN

95.     In May 2004, Mr. Tran started working for UAL in San Diego, where he stayed until January 2012.  From January 2012 to the present, Mr. Tran has been employed by UAL at SFO.

96.     During his time in San Diego, Mr. Tran worked numerous times as a Lead and received the appropriate pay increase.

97.     When his first week at SFO in January 2012, however, Mr. Tran noticed that Lead Ramp Servicemen regularly delegated all of their work to Ramp Servicemen, whom did not receive the appropriate daily pay increase.

98.     Between January 2012 and November 2013, Mr. Tran was periodically assigned to perform the job duties of a Lead and on several occasions was not  paid the correct daily rate.

99.     When Mr. Tran started at SFO, his earned approximately $15.44 per hour.  Currently, his hourly pay rate is approximately $17.98.

100.    In early February 2013, Mr. Tran filed a grievance with IAMAW regarding the lack of appropriate compensation for performing Lead Ramp Serviceman duties.  A couple days later, IAMAW Shop Steward Christopher Lusk ("Mr. Lusk") informed Mr. Tran that only one grievance about a work issues could be active at a time and reiterated the phrase, "this is the way

1   it's done in San Francisco," and "we don't need Leads in San Francisco" or words to that effect.

2   101.    Though Mr. Tran felt that the lack of appropriate compensation for performing Lead

3   duties was wrong, he became fully aware of the animus of Defendants IAMAW to Ramp

4   Servicemen at SFO when all Plaintiffs were converted to Lead Ramp Service Employees under

5   the 2013 Agreement, but with the negligible $1.75 per hour differential rather than the $21.98

6   rate Plaintiffs should have been paid when working out-of-classification.

7   102.    Mr. Tran's grievance was held in abeyance by Defendants IAMAW by subverting their

8   policy, pattern, and practice of not processing any other member's grievance while another

9   grievance is pending challenging the same work practice, because it was holding the first

10  grievance open indefinitely and/or in the alternative flouting the specific grievance procedures

11  set forth in Article XVIII of the 2005-2009 Agreement.

12                          **PLAINTIFF AARON T. MOODY**

13  103.    In May 2006, Mr. Moody began his employment with UAL in Denver.  From

14  approximately July 2006 to April 2007, he worked for UAL in Omaha, Nebraska.  He returned to

15  Denver around April 2007, where he remained until around April 2012.  Since April 2012, Mr.

16  Moody has worked for UAL at SFO.

17  104.    In 2008, while in Denver, Mr. Moody underwent training regarding minimum

18  qualifications to work as a Lead Ramp Serviceman.  Thereafter, he worked as a Lead on

19  numerous occasions and was paid the Lead Ramp Serviceman pay for each of those occasions

20  and accrued applicable longevity and seniority.

21  105.    Also while Mr. Moody worked in Denver, the local lodge of the International Association

22  of Machinists and Aerospace Workers protected its members by rejecting the implementation of

23  the so-called "Card Man Rule," which would have permitted UAL to pay Lead Ramp

24  Servicemen at the daily rate of Ramp Servicemen.

25  106.    Prior to SFO, Mr. Moody had always received the appropriate daily pay increases

26  whenever he was required to work out-of-classification as Lead Ramp Serviceman.

27  107.    When Mr. Moody started in SFO, however, he immediately noticed the pay discrepancy.

28

108.    When Mr. Moody started at SFO, his wages as a Ramp Serviceman were approximately $13.36 per hour.  His current rate of pay is approximately $14.40 per hour.

109.    In early February 2013, Mr. Moody filed a grievance with IAMAW regarding his lack of appropriate compensation for performing Card Person responsibilities.

110.    Mr. Ajetomobi orally responded to Mr. Moody's grievance immediately and stated that a grievance had already been submitted on the workplace practice, and that, "this is the way it's done in San Francisco," or words to that effect.

111.    Mr. Moody was aware of the pay discrepancy since his first day at SFO.  He also informally brought it to Mr. Ajetomobi's attention before February 2013, to which Mr. Ajetomobi stated that Mr. Moody was "no longer in Denver, and this was the San Francisco way," or words to that effect.

112.    After that time, both Mr. Moody and Mr. Smith independently began to talk with other UAL co-workers about the pay discrepancy.

113.    Mr. Moody's  grievance was held in abeyance by Defendants IAMAW by subverting their policy, pattern, and practice of not processing any other member's grievance while another grievance is pending challenging the same work practice, because it was holding the first grievance open indefinitely and/or in the alternative flouting the specific grievance procedures set forth in Article XVIII of the 2005-2009 Agreement.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (alleged by Plaintiffs against UAL)

114.    As a first, separate and distinct claim, Plaintiffs complain of Defendant UAL, individually and on behalf of the class, and allege:

115.    The factual allegations of Paragraphs 1 through 113, above, are re-alleged and incorporated herein by reference.

116.    Plaintiffs, by and through IAMAW, and Defendant UAL, by and through its agents, entered into the Agreement, a written contract that governed the terms of Plaintiffs' employment.

As stated above, the relevant terms of the Agreement defined the job responsibilities of the "Ramp Serviceman" and "Lead Ramp Serviceman" positions.  Additionally, as stated above, the 2005-2009 Agreement provided that Lead Ramp Servicemen were paid approximately $5-7 more per hour than Ramp Servicemen of employees with Plaintiffs' seniority, and accrued applicable longevity and seniority for such service.

117.    Plaintiffs undertook employment and duly performed all of the conditions of the Agreement by continuing to work for Defendant UAL as dedicated employees, following direction, and assuming the greater responsibilities of the Lead Ramp Serviceman position when called upon by their employer to do so.

118.    Defendant UAL, acting in concert with Defendants IAMAW, breached the Agreement with Plaintiffs by not compensating them with the appropriate daily pay increase, longevity, and seniority, even though they had collectively worked hundreds of days for UAL as unofficial Lead Ramp Servicemen, and had bargained for such rights, while all other Ramp Servicemen throughout the United system were compensated according to the provisions of the 2005-2009 agreement.

119.    Plaintiffs suffered damages legally caused by the breach of contract as set forth below.

## SECOND CAUSE OF ACTION
## BREACH OF DUTY OF FAIR REPRESENTATION
### (alleged by Plaintiffs against Defendant IAMAW and IAMAW Local Lodge 1781)

120.    As a second, separate and distinct claim, Plaintiffs complain of Defendants IAMAW, individually and on behalf of the class and allege:

121.    The factual allegations of Paragraphs 1 through 119 above are re-alleged and incorporated herein by reference.

122.    Jurisdiction arises under 29 U.S.C. § 185, 28 U.S.C. §§ 185, 28 U.S.C. §§ 1331 and 1337(a), and 28 U.S.C. §§ 2201 and 2202.

123.    Throughout their employment with UAL, Plaintiffs were represented as union members by IAMAW.

SECOND AMENDED COMPLAINT                                    3:14-cv-01763-EDL

124.    At all relevant times, UAL and IAMAW were parties to the 2005-2009 Agreement, which governed Plaintiffs' employment.  The Agreement was entered into for the benefit of the employees of Defendant UAL.  Plaintiffs were UAL employees entitled to the benefits of the Agreement, including its pay scale, as set by Article XXVI, Schedule A.

125.    Plaintiffs allege that as the exclusive bargaining agent for Plaintiffs, Defendants IAMAW had a duty to represent Plaintiffs fairly in enforcing their rights under the Agreement with UAL, namely the right to receive the appropriate daily compensation, longevity, and seniority for performing Lead Ramp Serviceman responsibilities.

126.     The cases are clear that both in the negotiation and the administration stages of the collective bargaining process, the Duty of Fair Representation protects the rank and file employee from arbitrary union conduct.  The judicially created doctrine mandates that when the Union deals for and with its rank and file members, it must act with complete good faith and honesty.

127.    As set forth above, while working at airports other than SFO, each of the Plaintiffs received the appropriate pay increase and/or IAMAW representation regarding compensation for performing Lead Ramp Serviceman responsibilities, as such the unlawful work practice complained of and Defendants IAMAW's breaches of duty discriminated against only those Ramp Servicemen located in the SFO hub.

128.    Defendant IAMAW has acted in concert with UAL to suppress the appropriate compensation owed to Ramp Servicemen at SFO per the Agreement by arbitrarily and intentionally flouting the express requirements of Article XVIII of the 2005-2009 Agreement and/or mutually agreeing to indefinitely extensions of the grievance deadlines to keep the grievances from resolution with UAL, with knowledge that UAL's practices, and IAMAW's lack of representation, were wholly inconsistent with IAMAW's representation at other locations governed by the 2005-2009 Agreement.

129.    By their grievances, Plaintiffs have exhausted all available avenues of relief which are warranted under the circumstances, and any other or further attempts would be inadequate or futile.

SECOND AMENDED COMPLAINT                                3:14-cv-01763-EDL

130.    Plaintiffs allege that Defendants IAMAW improperly handled employee grievances, and also discriminated against a certain class of employees during the actual bargaining process.

131.    Plaintiffs seek preliminary and permanent injunctive relief enjoining Defendants UAL and IAMAW from failing to compensate Plaintiffs at the appropriate daily rate, along with applicable longevity and seniority for performing Lead Ramp Serviceman work.

132.    In so doing, IAMAW, acting in concert with UAL, engaged in affirmative and intentional conduct, not mere negligence, which was not in the interests of Plaintiffs, its union members, and which breached the duty of fair representation which IAMAW owes all its members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray on behalf of themselves and other class members similarly situated for relief as follows:

1.   Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the members of the class and appointing Plaintiffs and their counsel to represent the Class;

2.   For general damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this court;

3.   For special damages in amounts according to proof;

4.   For injunctive relief restoring class members' longevity and seniority for periods of uncompensated Lead Ramp Serviceman performance;

5.   For attorneys' fees as provided by law;

6.   For interest as provided by law;

7.   For costs of suit herein; and

8.   For such other and further relief as the Court deems fair and just.

/ / /

/ / /

SECOND AMENDED COMPLAINT                                      3:14-cv-01763-EDL

Dated: September 22, 2014                         SMITH PATTEN

                                                  By:   _/s/ Dow W. Patten_____
                                                  SPENCER F. SMITH
                                                  DOW W. PATTEN
                                                  Attorneys for Plaintiffs
                                                  ARTHUR M. SMITH IV, RICHARD TRAN,
                                                  and AARON T. MOODY

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all matters so triable.


Dated: September 22, 2014                         SMITH PATTEN


                                    By:   ___/s/  Dow W. Patten_____
                                          SPENCER F. SMITH
                                          DOW W. PATTEN
                                          Attorneys for Plaintiffs
                                          ARTHUR M. SMITH IV, RICHARD TRAN,
                                          and AARON T. MOODY

SECOND AMENDED COMPLAINT                                   3:14-cv-01763-EDL