UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR M. SMITH IV, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED AIRLINES, INC., et al.,<br><br>Defendants. | Case No. 14-cv-01763-EDL<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 46, 47 |

On October 6, 2014, both Defendants brought motions to dismiss Plaintiffs' second amended complaint. For the reasons set forth below, Defendants' motions are GRANTED and the second amended complaint is dismissed with prejudice.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

This case stems from a compensation dispute between Plaintiffs, United Airlines, Inc. ("United") employees, Defendant International Association of Machinists and Aerospace Workers ("Union"), and Defendant United. Plaintiffs are ramp servicemen represented by the Union who currently work at San Francisco International Airport ("SFO"). Plaintiffs bring this action both individually and on behalf of a purported class of United employees who worked as ramp serviceman between 2011 and December 2013. (Cmplt. ¶ 6.)

Plaintiffs allege that between 2011 and November 2013, they "were required to perform Lead Ramp Serviceman duties without being paid the minimum Lead Ramp Serviceman rate for the classification" as required by the collective bargaining agreement ("CBA"). (Id ¶ 43.) They also allege that they did not "accru[e] longevity" while performing lead ramp serviceman duties, as required by the CBA. (Id. ¶ 44.) When Plaintiffs began to complain to their supervisors in August 2012, Plaintiffs allege that a new job classification not included in the CBA, "card-

person," was created. (Id. ¶ 48.) Plaintiffs allege upon information and belief that Defendants created this classification "for an improper purpose, in order to bide time until the ratification" of a new CBA "without paying Plaintiffs and others similarly situated their bargained-for increases in wages and loyalty." (Id. ¶ 49.) Plaintiffs also allege upon information and belief that Defendants Union and United agreed to hold "in abeyance any grievances that would result in substantial changes to pay or seniority, pending the negotiation and ratification" of the new CBA. (Id. ¶ 50.)

In January 2013, Plaintiffs allege that Plaintiff Smith filed a grievance concerning this issue and, upon failure to reach a resolution, filed a second step grievance three days later. (Id. ¶¶ 52-53.) Plaintiffs allege upon information and belief that the Union "neither considered nor determined whether a grievance existed as to Plaintiff Smith's Grievances" in violation of the CBA and "provided no written answer" as required. (Id. ¶¶ 62-63.) Furthermore, Plaintiffs allege upon information and belief that no follow-up occurred, also in violation of the CBA. (Id. ¶ 65.) Plaintiffs plead in the alternative and upon information and belief that Defendants "mutually agreed to extend the time limits . . . to address Plaintiff Smith's grievances" until after the new CBA was ratified in 2013. (Id. ¶ 57.) In February 2013, Plaintiffs allege that Plaintiffs Moody and Tran were told that their complaints were "covered by Plaintiff Smith's grievances" and that therefore the Union "would not prepare another grievance" in their names. (Id. ¶¶ 68, 69.) Plaintiffs further allege that on August 23, 2013, counsel for Plaintiffs wrote to the Union requesting that their grievances be processed. (Id. ¶ 75.)

On November 1, 2013, Plaintiffs allege that "a new collective bargaining agreement became effective between United and [the Union]." (Id. ¶ 77.) Plaintiffs allege that they have been damaged because the failure to resolve their pay issues "has prohibited Plaintiffs and other similarly-situated SFO-based Ramp Servicemen from accruing pay, longevity and seniority which would have grandfathered into a higher pay structure" with the new CBA. (Id. ¶ 82.)

On April 16, 2014, Plaintiffs filed this action alleging claims for breach of duty of fair representation against Defendant Union and breach of contract against Defendant United. After Defendants moved to dismiss the original complaint, Plaintiffs filed their first amended complaint on June 23, 2014. On July 7, 2014, Defendants filed motions to dismiss the first amended

1 complaint, which the Court granted with leave to amend, finding that Plaintiffs' claims as alleged were time-barred.

## II. STANDARD

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

## III. DISCUSSION

### A. Statute of Limitations

Plaintiffs bring a "hybrid" claim for breach of duty of fair representation against the Union and breach of contract against United. As the Court previously held, this claim is subject to a six-month statute of limitations that began to run when Plaintiffs knew or should have known of the alleged breach of duty of fair representation by Defendant Union. (Dkt. 39 at 3.) Plaintiffs again rely on Galindo v. Stoody Co., 793 F.2d 1502 (9th Cir. 1986), arguing that if the statute of limitations period began running prior to November 2013 when the new CBA became effective, it was tolled up until that time because they were pursuing their grievances with the Union. See Galindo, 793 F.2d at 1510-11. However, as this Court has already held, Galindo only stands for the proposition that the statute of limitations is tolled while grievances are being pursued as mandated by the collective bargaining agreement. (Dkt. 39 at 4.) Thus, tolling does not apply after Plaintiffs knew or should have known that their grievances were not being pursued by Defendants.

In support of tolling, Plaintiffs allege two possible sets of facts: (1) that the Union never followed up on Plaintiffs' grievances, in violation of the CBA; or (2) that Defendants reached an agreement to indefinitely postpone resolution of Plaintiffs' grievances until after the negotiation of the new CBA. With regard to the first scenario, this Court previously held that prolonged inaction on the part of the Union can trigger the statute of limitations. (Id. at 3-4 n.2.) Here, Plaintiffs allege that they last heard from Union officials in February 2013, well before their counsel requested in late August 2013 that the Union "commence a grievance process on the issue." (Cmplt. ¶ 75.) This period of inaction should have put Plaintiffs on notice of the breach, and Plaintiffs were certainly on notice once they retained counsel. See Leorna v. U.S. Dep't of State, 105 F.3d 548, 551 (9th Cir. 1997) ("once a claimant retains counsel, tolling ceases because she has 'gained the "means of knowledge" of her rights and can be charged with constructive knowledge of the law's requirements.'" (quoting Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044, 1050 (9th Cir. 1987))). Plaintiffs' first set of facts is therefore untimely.

Plaintiffs' alternative set of facts, pled only on information and belief, is that Defendants reached a mutual agreement to extend the time to resolve Plaintiffs' grievances. Plaintiffs allege:

> "In the alternative, and upon information and belief, Defendants mutually agreed to extend the time limits of Article XVIII of the 2005-2009 Agreement to extended the time limit for both the Company and the Union to comply with their specific obligations as set forth below, to address Plaintiff Smith's grievances until the 2013 Agreement was fully negotiated and ratified."

(Cmplt. ¶ 57; see also ¶ 92 (alleging that Defendants agreed "to extend indefinitely all time periods there in to respond to Mr. Smith's grievances through the ratification of the 2013 Agreement").) However, contrary to their argument, Plaintiffs do not actually allege that Plaintiffs had any knowledge of this agreement. (See Opp. to Union Mot. at 8. ("Plaintiffs allege that they believed that Defendants mutually agreed to wait until 'the 2013 Agreement was fully negotiated and ratified' prior to resolving any 'grievance that would result in substantial changes to pay or seniority.'"). Nor do Plaintiffs allege that they "believe[d] that . . . Defendants would resolve the issue through negotiations for the 2013 Agreement." (Id.) Indeed, the hypothetical allegation that Plaintiffs were waiting to continue pursuing their grievances until after the new CBA was ratified

4

would be fundamentally inconsistent with Plaintiffs' allegation that in August 2013 their counsel requested that the Union commence a grievance. (Cmplt. ¶ 75.) Furthermore, at oral argument, Plaintiffs' counsel was unable to state a basis for this "information and belief" from which it could be inferred that an agreement between Defendants to extend the grievance time limit was actually reached. Thus, Plaintiffs' claims are untimely because the statute of limitations would have started running, at the latest, in August 2013.

**B. Failure to State a Claim**

Even if Plaintiffs' claims were not time-barred, Plaintiffs failed to state a claim. Plaintiffs assert two causes of action: breach of duty of fair representation against Defendant Union, and breach of contract against United. These claims are "'inextricably interdependent'" and to prevail, "plaintiff must show that the union and the employer have both breached their respective duties." Bliesner v. Commc'n Workers of America, 464 F.3d 910, 913 (9th Cir. 2006) (quoting Delcostello, 464 U.S. at 165); Ayala v. Pacific Maritime Ass'n, 2011 WL 3044189, at *4 (N.D. Cal. July 25, 2011) (Henderson, J.). Put another way, "[t]o prevail on [a] claim for breach of the collective bargaining agreement [against United], [Plaintiff] must show, as a prerequisite, that the Union breached its duty of fair representation." Bliesner, 464 F.3d at 914.

"[A] union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith.'" Air Line Pilots Ass'n, Int'l, v. O'Neill, 499 U.S. 65, 67 (1991) (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)); Truesdell v. S. Cal. Permanente Med. Grp., 293 F.3d 1146, 1153 (9th Cir. 2002) (same). Assessing whether a Plaintiff has adequately alleged such a claim involves a two-step process:

> "First, [the Court] must decide whether the alleged union misconduct involved the union's judgment, or whether it was procedural or ministerial. Second, if the conduct was procedural or ministerial, then the plaintiff may prevail if the union's conduct was arbitrary, discriminatory, or in bad faith. However, if the conduct involved the union's judgment, then the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith."

Marino v. Writers Guild of America, E., Inc., 992 F.2d 1580, 1486 (9th Cir. 1993) (internal quotation marks omitted) (citing Burkevich v. Air Line Pilots Ass'n, Int'l, 894 F.2d 346, 349 (9th Cir. 1990)); Holmes v. Tenderloin Hous. Clinic, Inc., 772 F. Supp. 2d 1074, 1097 (N.D Cal. 2011)

(Hamilton, J.). Here, the Parties agree that the conduct at issue involved Defendant Union's judgment. (Opp. to United Mot. at 10 ("a Union's decision not to arbitrate a grievance is considered to be an exercise of its judgment").) Thus, the Court proceeds directly to step two of the analysis.

Under step two, the Court's examination "must be highly deferential" to Defendant Union because "Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union." O'Neill, 499 U.S. at 78; Holmes, 772 F. Supp. 2d at 1096-97 ("The Supreme Court 'has long recognized that unions must retain wide discretion to act in what they perceive to be their members' best interests.'" (quoting Peterson v. Kennedy, 771 F.2d 1244, 1253 (9th Cir. 1985))).

Plaintiff only alleges arbitrariness. (See Opp. to United Mot. at 2-3, 9-10; Opp. to Union Mot. at 2, 10-11; Cmplt. ¶ 128 (alleging that Defendants "acted in concert . . . . by arbitrarily and intentionally flouting the express requirements of" the CBA "and/or mutually agreeing to indefinite[] extensions of the grievance deadlines.").) However, arbitrariness is not sufficient where the alleged misconduct involved the union's judgment. Marino, 992 F.2d at 1486; Holmes, 772 F. Supp. 2d at 1097. Furthermore, Plaintiffs' allegations do not support a finding of discriminatory conduct or bad faith. A showing of discriminatory conduct requires "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge, 403 U.S. 274, 301 (1971). Plaintiffs' allegation that ramp servicemen at airports in Chicago and Washington, D.C., who perform lead ramp servicemen duties receive higher compensation (Cmplt. ¶ 66), does not amount to substantial evidence of intentional and severe discrimination. Indeed, the CBA recognizes that the ramp serviceman position varies "greatly at the different locations where Ramp Servicemen are assigned depending on numbers of workers, work organization, business volumes, location and types of facilities, et cetera." (Reardon Decl. Ex 1 at 116.) As the Supreme Court has recognized, "it is well established that the parties' 'practice, usage, and custom' is of significance in interpreting their agreement." Consol. Rail Corp. v. Railway Labor Execs. Ass'n, 491 U.S. 299, 311 (1989) (quoting Transp. Union v. Union Pacific

1  R. Co., 385 U.S. 157, 161 (1966)).  Furthermore, bad faith requires "'substantial evidence of
2  fraud, deceitful action or dishonest conduct.'"  Amalgamated Ass'n., 403 U.S. at 299.  The
3  complaint provides no basis for such a finding.

**IV. CONCLUSION**

Defendants ask the Court to dismiss with prejudice.  Plaintiffs have already had two opportunities to amend their complaint.  Further amendment would be futile.  Consequently, the Court GRANTS Defendants' motions and dismisses the second amended complaint with prejudice.

**IT IS SO ORDERED**.

Dated: December 5, 2014

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge